Argued February 17; affirmed March 28, 1933

# CHRISTIE *v.* GREAT NORTHERN RAILWAY CO.

(20 P. (2d) 377)

*Fletcher Rockwood,* of Portland (Carey, Hart, Spencer & McCulloch, of Portland, on the brief), for appellant.

*Paul R. Harris,* of Portland (Davis & Harris, of Portland, on the brief), for respondent.

BEAN, J.  The testimony tended to show that the railroad track at Chinook extends approximately east and west.  The box car was standing still at the station

platform which was on the south side of the track. When the plaintiff and conductor began to unload the wheels, they were against the north wall of the car in the west end, with the axle parallel to the length of the car. The two men inside the car first rolled the wheels away from the north wall; the conductor then held the east end with the plaintiff at the west end; plaintiff swung the west end in a 90° arc placing the axle at right angles to the length of the car. The wheels were then rolled east to the center of the car opposite the south door and the plaintiff brakeman went to what was then the north end to lift what had been the conductor's end at first, and the conductor undertook to hold what was then the south end, preparatory to swinging the north end to place the axle parallel with the length of the car so that the wheels would be in a position to roll straight out of the south door. In this second turning plaintiff testified he was injured. He testified, as a witness, in regard to the injury as follows:

"Q. Would you mind explaining to the jury just how that came about?

"A. There was steel wheels on an axle; they were either small car wheels or pony engine trucks. I don't know which. They were sitting in the car, in the west end on the north side, with both wheels against the wall; so to unload them, we had to roll them out a little ways, then swing the west wheel around, roll them east to the door. At the door they had to be lifted a little in the air, just a few inches, up on some plates, one wheel, and then the north wheel had to be swung east so we could roll them south out of the door. We rolled them out from the wall. I lifted the west wheel around until it was then the south wheel. We rolled them forward to the door, even with the door. I lifted the south wheel up on these plates and the conductor then at the north wheel—the conductor did not lift his wheel

around, as I had lifted my wheel around. I don't know whether he was not able to or not, but he ordered me to lift it around.

"Q. That is, his end?

"A. His end. That he would hold my end while I lifted his end around. I went around to lift his end around, and while we was lifting, whether he slipped or whether he didn't watch what he was doing and let the wheel slip a little ways, a few inches, while I was lifting hard, then taking a step on my left foot, it throwed me off balance and against the wall, hurt my back and wrenched my hip around.

"Q. What caused you to take this misstep?

"A. Well, as I was lifting on this journal which extends out from the wheel on each end several inches, I was holding this journal to lift the wheel off the ground and swing it around and had swung it quite a ways around when he let his wheel move forward just a few inches; enough that with the intense weight of lifting that just enough, and when I was on one foot, it threw me off balance.

*      *      *      *      *

"A. I don't know whether he let entirely go or whether it just slipped on him".

Plaintiff further stated in answer to a question by a juror, while the witness was being cross-examined, in regard to his injury: "It was sustained by the — letting the wheel go and wrenching my back and hip as it threw me". He further testified, in substance, that when the wheels slipped it twisted his back; it twisted him and wrenched his back and threw him sideways against the side of the car and hurt his side and hip. The witness further stated: "I think both caused it, the twist and the injury, by hitting the side of the car, too".

The conductor Hillsabeck, as a witness for defendant, testified that he did not see the defendant lose his

balance; that he did not let go of his end; that his end did not slip or slide, and that after the second turning was completed the wheels were rolled through the south door of the car and were dropped to the gravel platform. At the time two other employees, rear brakeman McCrorie and the station helper, were on the platform to move freight as it was unloaded from the car.

■ The defendant assigns that the trial court erred in denying defendant's motion for a directed verdict in its favor. The grounds upon which defendant relies are: First, that there was no evidence of negligence on the part of defendant; second, that any injury that plaintiff received arose out of the risk which he assumed as a matter of law. The case arises under the Federal Employers' Liability Act and the rulings of the Federal Court in applying the provisions of the act are controlling.

The complaint charges the defendant with negligence in three particulars: (1) "That while plaintiff was so engaged in said operation, and in particular in shifting said wheels and axles, the said conductor carelessly and negligently let go of his hold upon the opposite end of said axle, * * *"; (2) that defendant negligently employed an incompetent fellow-servant; (3) that defendant failed to direct a sufficient number of men to assist in shifting the wheels. The second allegation of negligence was withdrawn at the time of the trial and need not be further considered.

Plaintiff contends that under the testimony in the case the question as to whether the defendant or supervising officer, the conductor, was negligent in ordering the work in question to be done by two men instead of by more than two, was one of fact for the jury; that

plaintiff in the instant case did not assume the risk as a matter of law, and that the question of assumption of risk was properly submitted to the jury.

Defendant argues that there is no testimony that the conductor "let go" of the wheel, and the plaintiff testified, in effect, that he did not know whether he let go entirely or whether he loosened his grip so that it slipped.

As we view the testimony, this is merely a manner of expression. We fail to see the difference, whether the action of the conductor was described as "letting go" or whether he let go partially so that the wheel slipped.

The two allegations of negligence are so intimately connected that we think they can be considered together. It will be noticed from the testimony, and the jury would be warranted in concluding, that the plaintiff at the time he was injured was moving one end of a heavy pair of wheels rigidly attached to an axle. He was at work with the conductor of the train upon which he was a brakeman. The conductor was his superior and vice principal.

It is urged by defendant that if the plaintiff believed it was necessary to have more assistance he should have called to the two men who were outside of the car. Evidently the jury had reason to believe that plaintiff was at work under the direction of his superior, whom it was his duty to obey, and that it was not the duty of a brakeman to direct the conductor how the work should be done. We know of no rule of law, or of a railroad, or any practice upon a railroad, requiring a brakeman to direct the conductor how he should proceed to unload a car. The jury might reasonably believe that if the additional help was required it was the duty of the conductor or vice prin-

cipal to call to the other men, which could easily have been done, and that the conductor neglected to do that. It was pictured to the jury that the plaintiff was called upon to move a pair of wheels, weighing nearly 500 pounds, with the help of the conductor. The description of the manner in which the work was done was not that the conductor was able to keep up his end of the work. When the wheels were first moved, the plaintiff lifted the end around in an arc, the conductor merely holding the other end stationary. After the wheels were moved near the door of the car and it was necessary to swing one end of the wheels around parallel with the length of the car, the conductor did not stay at his end and lift it, but changed to the other end and plaintiff went to the conductor's end to lift the wheel around. It was different from the first moving of the pair of wheels for this reason: They had to be lifted up a few inches onto a plate. The jury evidently thought that the difficulty in moving the article did not so much depend upon its weight as upon the shape, and that it was awkward or bungling. They no doubt knew what it was to handle a pair of wheels with no tongue or pole or thills attached, and from the testimony we think it was for the jury to determine whether, in the exercise of ordinary care, the defendant should have furnished more than one man besides the conductor to move the wheels, in order to make the place where plaintiff was required to perform his labor reasonably safe, and whether the conductor was negligent in letting go of his end or letting his wheel slip.

■■ The question of negligence should be submitted to the jury for determination whenever fair-minded men may honestly draw different conclusions from the facts in evidence. The question of negligence is one of law for the court only when the facts are such that all

reasonable men must draw the same conclusions from them. *Gunning v. Cooley,* 281 U. S. 90 (74 L. Ed. 720, 50 S. Ct. 231); *Gardner v. Michigan Cent. R. Co.,* 150 U. S. 349 (37 L. Ed. 1107, 1110, 14 S. Ct. 140); *Grand Trunk Ry. v. Ives,* 144 U. S. 408 (36 L. Ed. 485, 12 S. Ct. 679).

The question as to whether defendant or its supervising officer, the conductor, was negligent in requiring the work in question to be done by one man with the assistance of the conductor and in failing to call for other help from the two men who were just outside of the car, under the testimony in the case, was one of fact for the jury to determine. *Cave v. Brown & McCabe, Stevedores, Inc.,* 128 Or. 286, 291 (274 P. 505); *Wike v. Oregon-Washington R. & N. Co.,* 83 Or. 678, 682 (163 P. 825); *St. Louis, S. W. Ry. Co. v. Gillenwater* (Texas), 284 S. W. 268, 272; *Smith v. Kitchen Lbr. Co.* 198 N. C. 736 (153 S. E. 324); *Levecke v. Curtis & Co.,* 197 Mo. App. 262 (193 S. W. 985).

In *Gunning v. Cooley,* supra, the United States Supreme Court said, in part:

"Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. Richmond & D. R. Co. v. Powers, 149 U. S. 43, 45, 37 L. Ed. 642, 643, 13 Sup. Ct. Rep. 748, 7 Am. Negl. Cas. 369".

■ Upon a motion for a directed verdict in favor of defendant, every reasonable inference that may be drawn from the testimony is to be resolved in favor of plaintiff. The question for our determination, in so far as the issue of defendant's negligence is concerned, is whether reasonable minds might differ on

the question as to whether defendant was guilty of negligence in the two respects, or one of them, alleged in the complaint; that is, under the testimony, it was a question for the jury to determine whether it was negligence on the part of the conductor to "let go" of the wheel, as stated once or twice by plaintiff, or, as he described it, the conductor let his end of the wheel slip, and whether it was negligence upon the part of the conductor, in the hurry of unloading the car in order that the train might proceed upon its way, to supervise the moving of the ponderous wheels by the plaintiff with the assistance of the conductor, instead of requiring additional help from the two men outside the car. The jury might reasonably have found that the conductor could have supervised the work and obtained the assistance of another strong man like plaintiff, or two men, and that it was negligence for him not to provide a safer way of moving the unwieldy wheels.

*Ranstrom v. International Stevedoring Co.,* 152 Wash. 332 (277 P. 992), an action under the Federal Employers' Liability Act, was a case resembling the one at bar. Plaintiff was injured by the improper handling of a sack of wheat in the lower hold of the vessel. One Peppmoeller was placed on the landing table and it was his duty to receive the sling loads of sacks from above, and then, as the men passed along, among whom was plaintiff, each man would take hold of the ears of a sack of wheat and Peppmoeller would lift the sack and place it on his shoulder. Sacks of wheat average 135 pounds in weight. The men were compelled to work rapidly. We quote from the language of the court:

"Respondent had taken hold of the ears of a sack, and Peppmoeller lifted it to place it upon his shoulder. For some reason the sack was not lifted high enough,

or the side motion took place a fraction of a second too soon, so that the sack, instead of landing squarely on respondent's shoulder, struck the side of the shoulder, and, as respondent testified, 'when the sack landed on the shoulder there was a snap in it and at the same time my shoulder went on the bum' ''.

Thereby plaintiff was injured. The trial court instructed the jury that the employee does not assume the risk arising from the negligent act of another employee. The supreme court held that the instruction was correct, as applied to the facts in the case. Citing *Rasmussen v. Twin Harbor Stevedoring Co.*, 147 Wash. 260 (265 P. 1085). The court then stated, in effect, that a different rule might apply if the negligence of the fellow-servant was open and apparent, and with knowledge of such continuing negligence the respondent had continued to work.

In the present case, while in the able brief of counsel for defendant strong argument is made that plaintiff, with the aid of the conductor, had once moved the wheels, it was practically all one act in unloading the wheels, and, more than that, the moving of the wheels the first time was under different conditions from turning them around the second time for the reason that the wheels had to be raised up onto a plate. The case in hand is stronger than the case of *Ranstrom v. International Stevedoring Co.*, supra, in that plaintiff, instead of working with a fellow-servant on a par with him, was working with his superior, whose duty it was to direct the manner of conducting the work of unloading the wheels from the car. See also *Texas & P. Ry. Co. v. Perkins*, 29 S. W. (2d) 835.

*Wheeler v. Mo. Pac. R. Co.*, 322 Mo. 271 (18 S. W. (2d) 494), (Certiorari denied by U. S. Supreme Court, 74 L. Ed. 621), was an action for damages under the

Federal Employers' Liability Act. It was alleged as negligence that while plaintiff and two of his coemployees were engaged·in moving a large iron wheel on defendant's freight platform, one of the men assisting negligently turned it loose and failed to support it, thereby causing it to fall on plaintiff and injuring him. Defendant denied negligence and further pleaded assumption of risk on the part of plaintiff. We quote a portion of the language of the court in holding that the negligence was for the determination of the jury:

"Considering the size and weight of the wheel, the difficulty of handling it, and plaintiff's position (near the center of the wheel) at the time, it was for the jury to say whether or not Doyle exercised ordinary care in releasing his hold on the wheel, and the jury were fully warranted in finding that Doyle was negligent in so doing, under such circumstances. Karagas v. Railroad Co. (Mo. App.) 232 S. W. 1100".

■ Defendant contends that where an employee is fully aware of the necessity for additional help and yet proceeds with the work, he assumes the risk of an injury resulting from the inadequate force. It is a well-settled rule that an employee assumes the ordinary risks incident to his employment and also those extraordinary risks arising through the negligence of the employer if he understands and appreciates them. *Bevin v. O.-W. R. & N. Co.,* 136 Or. 18, 27 (298 P. 204).

■■ Under the circumstances of this case, as shown by the testimony, practically without dispute, we do not think that the risk arising at the time plaintiff was injured by the letting go or letting the opposite end of the pair of wheels slip and the scant force of help in performing the act could be understood or appreciated by plaintiff, so that we can say as a matter of law that the plaintiff assumed the risk, but, under all of the

circumstances, it was a question for the determination of the jury under proper instructions of the court.

In discussing a similar question in *Shields v. W. R. Grace & Co.*, 91 Or. 187 (179 P. 265), Chief Justice McBride, at page 203 of the Oregon Reports, records the following language:

"It was the master's duty to make the place, where plaintiff was put to work, reasonably safe and plaintiff had a right to rely upon the presumption that such duty had been performed, unless the failure to perform it was so obvious that a reasonably careful and observant man would have discovered that fact without special investigation".

It was held in *Cave v. Brown & McCabe, Stevedores, Inc.*, supra, in effect, that, in an action under the Seamen's Act of March 4, 1915, § 20, as amended by the Act of June 5, 1920, § 33, 46 U. S. C. A. § 688, for injuries sustained by a longshoreman while attempting to move heavy irons about a ship, the question of whether the longshoreman assumed the risk was for the jury.

In the present case, under the testimony, we think it was a question for the jury to determine whether the conductor and vice-principal properly supervised the moving of the wheels with the assistance of plaintiff only, without requesting more assistance from the men just outside the car, and also, whether the conductor was negligent in letting his end of the wheels slip. We cannot say, as a matter of law, that the defendant was not negligent or that the plaintiff assumed the risk. The jury evidently believed when this was done that it put the plaintiff in much the same position as if he had been rolled over a barrel, that it was not a matter which could reasonably have been foreseen and appreciated by plaintiff.

In *St. Louis S. W. Ry. Co. v. Gillenwater,* supra, plaintiff alleged that he was directed by defendant, with the assistance of another employee, to move certain coach couplers to a storing platform. While so engaged the coupler fell from the platform, causing plaintiff's injuries. Among other allegations of negligence there was the charge that defendant was negligent in failing to furnish sufficient force of men and that plaintiff's fellow-servant was negligent in that he carelessly and negligently "let go or turned loose of said coupler" and permitted same to fall on plaintiff. It appears from the opinion that plaintiff testified: "that he did not see his helper at the time. He was unable to state what Glenn Norman did or failed to do, but we think the jury was authorized to conclude that Glenn Norman was of sufficient strength to hold the coupler upright, and that in the exercise of due care he should have done so. The jury were not compelled to believe Glenn Norman's statement, and could conclude that his youth, immaturity of mind, and inexperience in the work in which he was engaged rendered him less careful and less attentive than was required under the circumstances, and hence that by failing to maintain a sufficient hold upon the shank of the coupler, or by permitting it to lean too far away from him, he was guilty of negligence".

*McDonald v. Louisville & N. R. Co.,* 232 Ky. 734 (24 S. W. (2d) 585), was an action against the railroad company by the plaintiff, a car repairer. He was assisting his foreman to place wheels taken from the engine tender on rails. Plaintiff rolled one end of the wheels around to the edge of the rail, and Cruse caught hold of the lever with him and the two lifted or rolled it up onto the rail. Cruse suddenly let loose of the lever and plaintiff testified that it threw all the weight on or against him. The negligence alleged was that Cruse suddenly and without warning let loose of the

wheel. The Supreme Court, in reversing the judgment of the trial court, said in part as follows:

"The trial court gave the peremptory instruction on the ground that the plaintiff had assumed the risk as an incident to his labors. * * * In this, the employe does not contract against the negligence of the employer, which under the constitution he could not do affirmatively. We cannot, therefore, agree with the learned judge that the rule is altogether applicable, for the plaintiff did not assume the risk incident to any negligence of Cruse. Taking the plaintiff's evidence as true (as must be done in considering the motion), it is shown that the injury was the proximate result of the action on the part of the foreman in suddenly releasing the lever, or perhaps of obeying his orders in the emergency. * * *"

In *Guirizinski v. American Radiator Co.*, 222 N. Y. 85 (118 N. E. 215), plaintiff, who was assisting a belt repairer, was injured when the latter opened the ends of a belt, causing it to fall and knock over a loose radiator onto plaintiff's foot. The lower court had directed a verdict in favor of the defendant. The court of appeals, in reversing the case, among other things, said:

"Kincewicz testified that the belt fell because he pried it open. The inference is permissible that by inattention or indifference to the surroundings he permitted this large, heavy belt to come down with considerable force where it might hit plaintiff or knock over on him a radiator which stood unfastened on the floor, and that he thus failed to observe that degree of care which was due to plaintiff for his protection from injury".

See also *Koukouris v. Union Pac. Ry. Co.*, 193 Mo. App. 495 (186 S. W. 545), where the plaintiff, a section hand, brought action against the railroad company, alleging that a fellow laborer, suddenly and without warning, negligently lowered a rail, causing it to come

down on his foot. In disposing of the issue of negligence and assumption of risk, it was held that the fellow-servant in that instance was clearly negligent in dropping the rail without warning and before plaintiff had been afforded a fair chance to shift his position.

In regard to the contention made by defendant that plaintiff Christie should have requested that additional help be furnished to perform the work in question, in *Levecke v. Curtis & Co.*, supra, it was held, in substance, that the master, who has intrusted to his superintendent the duty to hire sufficient number of servants is responsible for his failure to do so, citing cases. He could not shift the responsibility to do this upon another. Citing *Brown v. Rome Machine & Foundry Co.*, 5 Ga. App. 142 (62 S. E. 720), where it was held that "One of the nondelegable duties of a master is to furnish an adequacy of competent servants to do the work in hand". Also citing *Haviland v. Kansas City, P. & G. R. R. Co.*, 172 Mo. 106, 112 (72 S. W. 515, 516), where it is said: "When the work requires men to do it, the men engaged therein are classed as appliances". Citing authorities. See also *Bradford v. MacEnglish,* 190 N. C. 742 (130 S. E. 705); *Pyatt v. Southern Ry. Co.,* 199 N. C. 397 (154 S. E. 847). In *Chicago R. I. & P. Ry. Co. v. Ward,* 252 U. S. 18 (64 L. Ed. 430, 40 S. Ct. 275), plaintiff, a switchman, while riding on a cut of freight cars, was held not to assume the risk of sudden precipitation from the front end of the car by the abrupt checking thereof, brought about by the negligence of the engine foreman. The syllabus of that case reads: "The Federal Employers' Liability Act places a coemploye's negligence, when it is the ground of the action, in the same relation as that of the employer upon the matter of the assumption of risk". See *Chesapeake & Ohio Ry. Co. v. DeAtley,* 241 U. S. 310 (60 L. Ed. 1016, 36 S. Ct. 564).

In *Seaboard Air Line Ry. Co. v. Horton,* 233 U. S. 492 (58 L. Ed. 1062, 34 S. Ct. 635, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475), the United States Supreme Court sanctioned the submission to the jury of the question of assumption of risk where the facts were undisputed, although not approving the manner in which the question was submitted to the jury by the charge of the court. Mr. Justice Pitney recorded the following language:

"Such dangers as are *normally and necessarily* incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. * * *" (Italics ours).

In the present case it should be remembered that there are no objections or exceptions to the charge of the court, but it is contended by defendant that the question of negligence and assumption of risk should not have been submitted to the jury. Applying the principle enunciated by the learned justice in the Horton case to the case in hand, it was for the jury to determine whether the danger of injury to the plaintiff was "normally and necessarily" incident to the moving of the wheels; that is, whether it was necessary for plaintiff and the conductor to move the wheels without further assistance and whether the action of the conductor in letting go of his end of the wheels or let-

ting the same slip was a necessary incident and whether plaintiff could reasonably be expected to appreciate the danger or whether the act of the vice principal unnecessarily rendered the place where plaintiff was to work unreasonably unsafe.

In *Engfors v. Nelson Steamship Co.,* 131 Or. 108, 115 (280 P. 337), an action brought under the Seamen's Act, which incorporates the Federal Employers' Liability Act by reference, it was held that an employee does not assume the risk of the employer's negligence unless the risk is so apparent and obvious that the employee must have known and understood it, or of such long standing that his appreciation and knowledge could be implied.

In the present case, as it arises under the Federal Employers' Liability Act, the provisions of the Oregon constitution, Art. VII, § 3, are not applicable. *Adskim v. O.-W. R. & N. Co.,* 129 Or. 169 (276 P. 1094) ; *Hopkins v. S. P. & S. Ry. Co.,* 137 Or. 287 (298 P. 914, (2 P. (2d) 1105) ; *Chicago, Milwaukee & St. Paul Ry. Co. v. Coogan,* 271 U. S. 472 (70 L. Ed. 1041, 46 S. Ct. 564). Neither do we apply the scintilla doctrine in considering this case.

As to the contention of defendant that it was the duty of plaintiff to request additional help, if it was necessary, defendant cites, among other cases, *Jarvis v. Erwin Cotton Mills,* 194 N. C. 687 (140 S. E. 602), where plaintiff was injured stacking beams which weighed from 285 to 300 pounds. It appears in that case that the employer had provided sufficient help then presently available and subject to the request of such employee. It does not appear that the foreman was immediately present but was relying upon the workmen to exercise their judgment. Similar conditions existed in a case, *Karny v. Northwestern Mal-*

*leable Iron Co:,* 160 Wis. 316 (151 N. W. 786), cited by defendant, where it appeared that plaintiff and six others were moving a machine weighing 760 pounds. Other workmen were close at hand and could have been called to assist. The foreman was not present, while in the case at bar he was present and participating in the work.·

In *Missouri Pac. R. Co. v. Horner,* 179 Ark. 321 (15 S. W. (2d) 994), where plaintiff was rolling an air brake cylinder over wet ground and the cylinder slipped, it does not appear that there was any foreman present to call for additional help.

We have already referred to the fact that in our opinion the jury was justified in finding that it was the duty of the conductor, in handling the wheels in question, to call for additional help and not the duty of the plaintiff. See 4 Labatt's Master and Servant (2d Ed.) § 1365.

Time or space will not permit us to review all the cases cited by defendant in his brief.

Guided by the opinions of the Supreme Court of the United States and the testimony and record in the present case, and, it appearing that the questions at issue were fairly submitted to the jury by an unchallenged charge, we are convinced that there was no reversible error in the record. The amount of the verdict indicates that the jury considered the case fairly and impartially.

Judgment of the lower court is therefore affirmed.

RAND, C. J., KELLY and BAILEY, JJ., concur.