Argued September 17; affirmed October 14; rehearing
denied November 13, 1941

# FITZE *v.* AMERICAN-HAWAIIAN
# STEAMSHIP CO.

(117 P. (2d) 825)

Before Kelly, Chief Justice, and Bailey, Lusk, Rand, Rossman and Brand, Associate Justices.

*K. C. Tanner*, of Portland, for appellant.

*Erskine Wood*, of Portland (Erskine B. Wood, of Portland on brief), for respondent.

RAND, J. This appeal is from an order setting aside a judgment for plaintiff and granting a new trial. The action was brought under section 688, Title 46, U. S. C. A., to recover for personal injuries alleged to have been sustained by plaintiff in the course of his employment on November 28, 1939, while he was employed as an able seaman on the S.S. Missourian at the Port of Westport, Oregon. That section provides that any seaman suffering personal injury in the course of his employment may, at his election, maintain an action at law with the right to trial by jury "and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases

of personal injury to railway employees shall apply * * *".

The cause was tried to a jury and a verdict rendered for $4,000 and judgment entered in favor of plaintiff.

The defendant offered no evidence except to introduce on the cross-examination of plaintiff the certificate of Doctor Holdt, hereinafter referred to.

According to plaintiff's own testimony, he was ordered, with other members of the crew, to assist in shifting a deck-load of lumber being carried by the vessel and, while so employed, one of the chains by which the lumber was fastened fell, striking him on the head above his right eye, which knocked him down and rendered him unconscious for some ten minutes. He was then taken to a doctor's office in Westport and, after being treated by the doctor, was returned to the vessel. Upon its reaching Astoria on the afternoon of the same day, plaintiff was paid off and taken to a bus station from which he rode to Portland and from there he went to Beaverton and stayed overnight in the home of a friend. On the following morning, he returned to Portland and went to the United States Public Health Service Relief Station for examination and treatment, following which, on the same day, he went down and registered for employment on another vessel and received a shipping card, stating as his reason therefor: "Well, I wanted to be ready to ship, and have a shipping card. Sometimes you can ship in ten days and other times it takes two and a half or three months."

■ The result of plaintiff's examination on the morning following his accident is stated in the certificate under seal, issued by Doctor Holdt, the surgeon in charge of the United States Public Health Service,

the same being defendant's exhibit 4, which reads as follows:

"Form 1946-T
U. S. Treasury Department
Public Health Service
September 1935

ABSTRACT FROM CLINICAL RECORD
Name . FITZE, Erwin    Occupation    Able Seaman
Age   21 years,    Last Vessel   S. S. "Missourian"
Furnished hospital care from x x x x x x x x x
Furnished outpatient care On Nov. 30, 1939.
Diagnosis Abrasion and contusion right brow.
      Laceration, right brow.

CONDITION OF PATIENT UPON ADMISSION
Abrasion and contusion of right eye over zygoma, ½ inch laceration of right eye brow above outer angle has been stitched with one dermal suture, Moderate edema about eye. Tender over zygoma — right ear negative drum clear. Right nares slightly edematous. No evidence of fracture on palpation. T.98⁴ P.68. Negative Romberg. Eyes react normally. Facial movement O. K. Hearing in both ears equal — 10/20

CONDITION OF PATIENT ON   Seen one time
only and was not disabled for duty.      (Date)

U. S. P. H. S. Relief Station    (Impression)
      (Station)               (  Service  )
215 U. S. Court House          (    Seal   )
Portland, Oregon       G. T. HOLDT
      (Address)      Surgeon, United States Public
                     Health Service, in Charge."

Under the evidence, this certificate can be issued and delivered only to the patient who submits himself for examination and not to his employer and was, in fact, delivered to the plaintiff and was in the possession of plaintiff's attorney during the trial. Upon demand being made therefor, the same was submitted

to the defendant's counsel and was offered by defendant and received in evidence and identified as defendant's exhibit 4. The copy thus offered and received in evidence as defendant's exhibit 4 was admissible under Title 28, Judicial Code and Judiciary, section 661, U. S. C. A., p. 428. That section provides:

"Copies of any books, records, papers, or documents in any of the executive departments authenticated under the seals of such departments, respectively, shall be admitted in evidence equally with the originals thereof."

The motion to set aside the judgment and for a new trial was based upon 14 grounds, each specifically stated in the motion. In disposing of this motion, the court based its decision mainly on two of the grounds urged in the motion: (1) that the damages awarded were excessive, and (2) an alleged error of the court in giving the statutory instruction contained in paragraph 7 of section 2-1001, O. C. L. A., to wit:

"That if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."

As stated, the jury returned a verdict for $4,000 which, under the evidence, was clearly in excess of any damages sustained by the plaintiff by reason of the accident complained of.

■ It is well settled by the decisions of this court and of the federal courts that, in actions brought under section 688, Title 46, U. S. C. A., to recover for personal injuries sustained by a seaman in the course of his employment, the courts of this state are not bound or in any way controlled by section 3 of Article VII of the Oregon constitution, which provides, among other

things, that: "no fact tried by a jury shall be otherwise re-examined in any court of this State, unless the court can affirmatively say there is no evidence to support the verdict". See *Christie v. Great Northern Railway Co.*, 142 Or. 321, 337, 20 P. (2d) 377, and authorities there cited. See also *Wychgel v. States Steamship Company*, 135 Or. 475, 495, 296 P. 863; *McCauley v. Pacific Atlantic Steamship Company*, ante p. 80, 115 P. (2d) 307, and cases there cited.

■ In view of plaintiff's own testimony, which shows that, on the afternoon and evening he sustained the injury, he traveled unattended by bus from Astoria to Portland and then went to Beaverton and, on the following morning, he returned to Portland, and, after submitting himself for examination at the United States Public Health station, he went to a union hall and applied for and received a card entitling him to immediate employment on any vessel which might require his services, coupled with the finding by Doctor Holdt that plaintiff "was not disabled for duty", it was sufficient, in the absence of some testimony tending to show some serious after-effects resulting from the injury, of which there was none, to justify the court in holding that the amount of damages awarded by the verdict was excessive and, upon that ground alone, to grant a new trial.

The main ground, however, which impelled the court to grant the motion was stated in his written memorandum filed by the court, as follows:

"The Court has examined with care the authorities cited by counsel for and against the motion and has reached the conclusion that it would avail little to enter into any discussion upon many of the questions discussed by counsel, in view of the fact that there are two outstanding matters in the record, the determina-

tion of which the Court feels will be sufficient to determine a disposition of the instant motion, and these are (1) an excessive award of damages, and (2) that the same was in a large measure brought about by the error of the Court in giving the requested instruction submitted by plaintiff with regard to the duty of the defendant to produce Dr. Holdt, Surgeon, United States Public Health Service, who signed under the seal of the United States Public Health Service an abstract from the clinical record (Exhibit 4), it being contended by counsel for the plaintiff in argument to the jury that it was the duty of the defendant to call said surgeon to the stand rather than to rely upon the abstract from the clinical record, as shown by Exhibit 4. * * *

''It is contended in support of the motion that counsel's argument to the jury virtually told the jury that the defendant's duty was to produce the United States Government Dr. Holdt. The transcript of counsel's argument shows a strenuous effort to impress the jury that it was incumbent upon the defendant to present Dr. Holdt for cross-examination. The fact is that the federal authorities presented by counsel for the defendant show that the official record under seal (Defendant's Exhibit 4) is itself the best evidence; and the record further shows that it was as much in plaintiff's power as in defendant's power to call the Doctor, and the rule with regard to the application of evidence of witnesses not produced is set forth elaborately in Wigmore on Evidence, beginning with section 285, under the title of 'Failure to Produce Evidence as Indicating Unfavorable Tenor of Evidence'.

''The fact was disclosed at the trial that this clinical record or certificate under the regulations of the department was to be furnished only to the seaman, the plaintiff in this case, and would be issued only upon the application of the seaman; that it was delivered to him, and Exhibit 4 was in the possession of the plaintiff's counsel at the trial, and at the time that it was presented in evidence. Defendant had no contact with the Department of Public Health Service with respect

to this certificate or clinical record, but the plaintiff did sustain a relationship to the report and was in just as good position, if not better, to obtain additional testimony by the presence of Dr. Holdt, the government Surgeon who issued this report. That being the case, no greater duty rested upon the defendant to produce Dr. Holdt than the plaintiff; in fact, the plaintiff was in a better position to bring forward a personal examination of the Doctor upon the witness stand. Applying the rule as recognized by Wigmore, it seems to the Court that it was not a matter of argument to the jury that it was the duty of the defendant to produce the witness, and that the Court did not have before it a proper occasion to invoke this statutory instruction with regard to weaker evidence. * * *

"* * in the instant case the jury were virtually told that they should find it to be a rule of law that the defendant should have called the federal doctor in place of relying upon the clinical report issued under the seal of the department. * * *

"Then there is a further reason that the great stress laid upon the failure of the defendant to call Dr. Holdt was prejudicial and probably accounts for the excessive verdict, which is that there is no evidence in the record that it was within the power of either party to call Dr. Holdt."

There is no showing in the record that Doctor Holdt was in Portland or anywhere where he could have been called by either party. Notwithstanding this, plaintiff's counsel, in his argument to the jury and in referring to this particular exhibit, said:

"Now, what good is evidence of that kind? This doctor that took care of him, I think acted in good faith, but are you going to accept a statement of that kind, a doctor that hasn't been questioned on the witness stand? If Mr. Wood had wanted to verify this, these doctors could have been subpoenaed over here. If Mr. Wood had thought that this could be proved—and you will be told if there is more satisfactory evidence avail-

able to a party and he produces less satisfactory, then you have a right to view the evidence offered with distrust. I thought to myself, 'Well, here are these men here. If this report is the thing upon which they rely,' I thought, 'Well, why bring just a writing that somebody makes? Why don't you bring the doctor in and then may be he would explain it and emphasize what he meant by it and give me a chance to ask him a few questions about the kind of examination he gave the boy?' * * *

"Now, he could have just as well brought that doctor in here. He could have just as well brought that doctor. I don't want to call a doctor to embarrass him. He has made a statement here that is adverse to me. I know that, and he knows that. Mr. Wood knows that. It is a statement favorable to Mr. Wood. Now, if he wanted to prove that by the best evidence available, then he should have brought Dr. Holdt in here and let Dr. Holdt testify about the nature of his examination and how he arrived at this conclusion that the boy was fit for duty."

Following this argument by plaintiff's attorney, the court told the jury that "if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust". Obviously, the jury, when so instructed by the court, were misled into believing that the defendant's failure to call Doctor Holdt entitled them to view with distrust the statements contained in defendant's exhibit 4 and to entirely disregard those statements, and this, in part, explains the excessive verdict rendered by the jury.

The plaintiff, however, contends that, under section 2-1001, subd. 7, O. C. L. A., and the decision in *Kern v. Pullen*, 138 Or. 222, 6 P. (2d) 224, 82 A. L. R. 434, it was the duty of the court to give that instruction

regardless of what effect it might have had upon the jury. In that case, this court, speaking through Mr. Justice CAMPBELL, said:

"The trial of every case, civil or criminal, is a 'proper occasion' to give the instructions specified in subdivisions 1, 2, 3, 6 and 7. In subdivisions 4 and 5, only that part which relates to criminal cases should be given in criminal actions, and only that part which relates to civil cases should be given in civil cases."

Section 2-1001, O. C. L. A., reads as follows:

"The jury, subject to the control of the court, in the cases specified in this Code, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions:

"1. That their power of judging of the effect of evidences is not arbitrary, but to be exercised with legal discretion, and in subordination to the rule of evidence;

"2. That they are not bound to find in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number, or against a presumption or other evidence satisfying their minds;

"3. That a witness false in one part of his testimony is to be distrusted in others;

"4. That the testimony of an accomplice ought to be viewed with distrust, and the oral admissions of a party with caution;

"5. That in civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory, the finding shall be according to the preponderance of evidence; that in criminal cases guilt shall be established beyond reasonable doubt;

"6. That evidence is to be estimated, not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; and therefore,

"7. That if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."

The construction placed on this statute in *Kern v. Pullen*, supra, fails to give any effect to the words "on all proper occasions", contained in the last sentence of the first paragraph of said section and construes the section as if those words had been omitted therefrom, and this, we think, was clearly erroneous. Section 2-216, O. C. L. A., provides:

"In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

Moreover, it is held that the failure of the trial court, in applicable criminal cases, to instruct the jury that the testimony of an accomplice ought to be viewed with distrust is not reversible error unless such instruction is requested and refused. See *State v. Edmunson*, 120 Or. 297, 249 P. 1098; and *State v. Keelen*, 106 Or. 331, 338, 211 P. 924. See, also, *Sorenson v. Kribs*, 82 Or. 130, 144, 161 P. 405, and cases there cited.

Again, in *Arthur v. Parish*, 150 Or. 582, 591, 47 P. (2d) 682, it was held that the failure to give the cautionary instruction relative to oral admissions of a party, as provided in subd. 4, section 2-1001, O. C. L. A., is a matter resting within the discretion of the court. Hence, if, as now contended by plaintiff and as held in *Kern v. Pullen*, supra, the court is bound to give all of the cautionary instructions contained in section 2-1001, then the court's failure to give such

instructions so far as applicable in the particular case, whether requested or not, would be reversible error.

With this doctrine, we cannot agree and what was said in the Kern case contrary to what is said here is hereby overruled.

There are twelve other grounds urged by the defendant in its motion to set aside the verdict and grant a new trial. Some of these grounds, we think, are well taken but since it is not likely that any of these objections will arise upon the retrial of this cause, they need not be further referred to.

For the reasons stated, the judgment appealed from is hereby affirmed and the cause will be remanded for a new trial.