Argued January 20, affirmed February 17, 1915.

## STATE *v.* L. W. PEARE.

(233 Pac. 256.)

**Criminal Law—Refusal of Instruction That Juror Having Reasonable Doubt Should not be Influenced to Vote for Guilt, Held Without Error.**

1. In murder prosecution it was not error to refuse instruction that if any juror entertained reasonable doubt of defendant's guilt, it was his duty not to vote verdict of guilty or to be influenced in so voting, for single reason that majority or any member of jury should be in favor of verdict of guilty or for purpose of arriving at verdict.

**Criminal Law—Refusal of Cautionary Instruction Held not Abuse of Discretion.**

2. In murder prosecution there was no abuse of discretion in refusal of cautionary instruction that jury were not to allow themselves to be swayed by passion or prejudice, nor allow mere sentiment to influence discharge of their duty.

**Homicide—Contention That Charge Did not Specifically Point Out Question of Defendant's Mental Condition at Time of Crime and Causes of Insanity Held Untenable.**

3. In murder trial, where court instructed that jury was not limited to testimony of medical experts or intimate acquaintances on question whether defendant was mentally insane at time of alleged crime, and jury could consider death of his wife and use of intoxicating liquors as bearing on question, contention that court

---

1. Proof of insanity beyond a reasonable doubt in homicide case, notes, 39 L. R. A. 737; 44 L. R. A. (N. S.) 125. See, also, 8 R. C. L. 222.

3. Effect of insanity induced by intoxication, note, 36 L. R. A. 479. See, also, 8 R. C. L. 130.

failed to point out specifically necessity of determining mental con-
dition at time of crime was untenable.

**Criminal Law—Testimony of Intimate Acquaintances of Defendant
as to Defendant's Conduct as They Knew Him Held Without
Prejudice.**
4. In murder prosecution there was no erorr, in view of sub-
division 10, Section 727, Or. L., in permitting testimony of intimate
acquaintances of defendant as to his mannerisms, speech, or actions
during the three years they had observed him.

**Criminal Law—Competency of Witnesses is Matter of Discretion,
and Exercise Thereof not Reviewed Except for Abuse.**
5. Competency of witnesses is matter resting in sound discretion
of court, and exercise thereof will not be refused except for abuse.

---

See (1) 16 C. J. 1029. (2) 16 C. J. 961. (3) 30 C. J. 359. (4)
16 C. J. 753. (5) 16 C. J. 749. 17 C. J. 241.

From Coos: JOHN C. KENDALL, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief over the names of
*Mr. Charles F. McKnight* and *Mr. John D. Goss*,
with an oral argument by *Mr. McKnight*.

For respondent there was a brief over the name of
*Mr. George Neuner* and an oral argument by *Mr.
Ben S. Fisher*, District Attorney.

BELT, J.—The defendant, L. W. Peare, was con-
victed of the crime of murder in the first degree, sen-
tenced to be hanged, and now appeals to this court.
He is charged with having shot and killed Jim Culver
with a rifle on December 27, 1922. To have a proper
conception of the questions before us for decision it
is necessary to give a brief recital of the facts and
circumstances surrounding the commission of this
crime. Peare is a rancher about sixty-seven years

---

4. See 14 R. C. L. 620; 8 R. C. L. 188.
5. See 28 R. C. L. 449.

of age, who for many years lived with his wife in an
isolated and mountainous section of Coos County.
Since boyhood he had been in the habit of using in-
toxicating liquor, and during recent years became a
slave to his appetite in this regard and drank when-
ever he could get it.  Aside from his work on the
ranch he incidentally operated a still for the purpose
of making "moonshine" whisky.  On the evening of
the day prior to the killing of Culver, the defendant,
while in a drunken brawl, killed his wife.  He placed
her on the bed, covered her with blankets to keep her
warm, and then made a futile effort to revive her.
He says that when he discovered his wife was dead,
he waited until daylight and shot all of his dogs and
cats, for the reason that they were his pets and he
did not want to leave them to be abused by any per-
son.  Then with his 30–30 rifle in his hand and a
large bottle of whisky in his pocket, he started out
with the express purpose and design to kill his long-
standing enemy, Jim Culver, a bachelor, who lived
about two miles away.  The defendant and the dece-
dent had quarreled about a line fence and over the
loss of a cow, but probably the real trouble between
them was concerning the defendant's wife.  Peare
says that he suspected Culver of having improper re-
lations with his wife, but, so far as the record dis-
closes, his suspicion was not well founded.  When the
defendant reached Culver's ranch, the following oc-
curred, according to his testimony:

"While he was standing there he picked up that
wood and I walked right down the hill and when I
got down there he walked right into the house and I
followed him into the house. * * Jim walked into the
house and threw the wood into the box, and when he
turned around and started to come back, I shot him.
* * He threw up his arms, I think he fell towards

me, * * and I think I kept backing and getting out
of his way, he fell down with his arms out * * and
I stayed there and I think he kind of raised up on his
hands to spit and I spoke to him and tried to get him
to speak, but he did not speak, and then I shot him
in the head, and I sit right facing him. I think when
I did that I spoke to him. * * They have told how I
picked up this blood and stuff, if I said that I cannot
deny it, but here is what I think I did do, when I
shot him the last time, there were white pieces of
his skull flew all around, there must have been lots
of them. Mr. Wilson can tell you the facts, and I
think I did stoop over and pick up one of them, more
to see what I had done, and what I hadn't done, and
I dropped it down and then I came right out of the
house, I don't just remember of leaving the house,
as near as I can remember I started right back.''

After the defendant had killed Culver he immedi-
ately went to the home of Samuel Stevens, who lived
in the same vicinity, and made an effort to kill him,
but was overpowered and his rifle taken away.
While in the Stevens home, the defendant, who had
become much intoxicated, was very talkative and
several times told in detail how he had killed his wife
and the man who had always been his enemy. He
expressed regret about the death of his wife, but
showed no remorse or sorrow over the fact that he
had killed Culver. It is conceded that Peare killed
Culver, but the theory of the defense is that he was
not mentally responsible when he did so.

Error is predicated on the giving of and the re-
fusal to give certain instructions. Defendant also
complains of the admission of the testimony of Peter
Culver and Carl Bushnell, relative to his sanity.

1. The court refused to give the following instruc-
tion:

''If, after a consideration of all the evidence, any
of the gentlemen should entertain a reasonable doubt

of the guilt of the defendant, it is the duty of such juror or jurors, if any there be, so entertaining such doubt, not to vote for a verdict of guilty or to be influenced in so voting, for the single reason that a majority or any member of the jury should be in favor of a verdict of guilty, or for the purpose of arriving at a verdict in the case.''

While this instruction is approved by a few authorities (*People* v. *Dole,* 122 Cal. 495 (55 Pac. 581, 68 Am. St. Rep. 50), *People* v. *Howard,* 143 Cal. 324 (76 Pac. 1116), *People* v. *Wong Loung,* 159 Cal. 520 (114 Pac. 829), it is against the decided weight of authority. *Commonwealth* v. *Hassan,* 235 Mass. 26 (126 N. E. 287); *People* v. *Lardner,* 296 Ill. 190 (129 N. E. 697); *Tucker* v. *State,* 17 Okl. Cr. 580 (191 Pac. 201); *Walford* v. *State,* 106 Miss. 19 (63 So. 316); *State* v. *Garth,* 164 Mo. 553 (65 S. W. 275); *State* v. *Howell,* 26 Mont. 3 (66 Pac. 291). The above instruction might well be considered by the average juror as an invitation for disagreement. Experience on the trial bench teaches that jurors are prone enough to disagree without being encouraged to do so by the court. This instruction is almost an exact prototype of the one considered in *People* v. *Dole, supra,* and *People* v. *Singh,* 20 Cal. App. 146 (128 Pac. 420), wherein the court, commenting upon the refusal to give such instructions, reiterated the propriety and justice of giving the same, but held it was not reversible error for failure to do so. Justice WORKS, in *People* v. *Walton,* 53 Cal. App. 35 (199 Pac. 824), in considering a requested instruction to the effect that the jury could not convict if any individual juror was not convinced of appellant's guilt beyond a reasonable doubt, said:

''It has been decided several times that such an instruction should be given, but the cases in which

that rule is announced are also to the effect that a failure to give it is not reversible error, upon the theory that the instruction is 'in effect simply admonitory and cautionary of the sworn duty of the jurors.' "

2. Complaint is made of the refusal of the court to give requested instruction number 16:

"*I instruct you that you are not to rush blindly to a conclusion in the case now under consideration, or to allow yourself to be swayed by passion or prejudice from the true line of duty as laid down in the law of the land, neither are you to allow mere sentiment to influence you in the discharge of your duty;* whatever your verdict is, it must be the product of a careful and impartial consideration of all the evidence in the case, under the rules of law as given you by the court. It is not sufficient for the State to make out by the testimony a strong probability of the defendant's guilt, or merely a better case than that of the defendant's. In order to secure a conviction, the state must convince you by the evidence, beyond a reasonable doubt, that the defendant is guilty as charged in the indictment."

This instruction was covered by the court with the exception of the italicized portion thereof. In our opinion, it would have been better had the trial court complied with the request of counsel in this respect; but giving a cautionary instruction rests in the sound discretion of the court: *State* v. *Howard,* 102 Or. 431 (203 Pac. 311); *State* v. *Megorden,* 49 Or. 259 (88 Pac. 306, 14 Ann. Cas. 130). There is nothing in the record, as in *State* v. *Barton,* 70 Or. 470 (142 Pac. 348), to indicate the necessity of giving such instruction. In the case last cited an examination of the record discloses that a petition, circulated in the county and signed by approximately 170 of the citizens of a small town therein, was presented to the

grand jury, virtually demanding the conviction of
the accused. This petition, which had been given·
wide publicity, was introduced in evidence as tend-
ing to show that a large percentage of the population
in such town had a strong prejudice against the de-
fendant; and under such circumstances this court
held that there was error for failure to give the cau-
tionary instruction as requested. The trial court is
in a much better position to judge the state of the
public mind relative to such matters than we are,
and its judgment should not be disturbed unless
there is an abuse of discretion. There was no error
in rejecting the instruction in question.

3. Error is claimed with reference to the court's
charge to the jury in that it failed to point out spe-
cifically the necessity of determining the mental con-
dition of the defendant at the time of the commission
of the alleged crime; and also that the court failed
to submit to the jury the theory of the defendant,
that his insanity had been produced as a result of
excessive use of intoxicating liquor or by the loss
of his wife. The contention is untenable in the light
of the following instruction, which the court gave:

"You are not limited to the testimony of medical
experts or intimate acquaintances in determining the
question whether the defendant was mentally insane
*at the time of the alleged crime,* but you are to take
into consideration all matters upon which testimony
has been introduced in this case, including his men-
tal condition before and after the alleged crime; the
acts and conduct of the defendant at the time of and
within a reasonable time before and after the alleged
criminal act; his conversations and negotiations and
dealings with other persons, *the death of his wife,
the use of intoxicating liquors;* his writings; his past
history and that of his family, his appearance and
conduct while testifying and during the trial, and if

you find a crime has been committed, the character of the crime, and the absence or presence of a motive for the commission thereof, all of these conditions and subjects, together with every matter upon which testimony has been introduced here in this case, are to be considered by you in deterimning his question of whether the defendant was mentally insane *at the time of the alleged crime.*"

It is true that a defendant has the right to have submitted to the jury any theory of defense supported by evidence; but it is not good practice—indeed, it is oftentimes misleading—to single out and give undue prominence to a particular item of testimony in an instruction: *State* v. *Newlin,* 92 Or. 589 (182 Pac. 133); *State* v. *Brumfield,* 104 Or. 506 (209 Pac. 120). Every phase of the law relative to the defense of insanity and which was applicable to the facts in the instant case was covered by the court in its charge to the jury in an able and careful manner. Most of the instructions given concerning this defense were approved in *State* v. *Brumfield, supra,* and were as favorable to the defendant as the law warrants.

4, 5. Defendant asserts that error was committed in receiving, over his objections, the testimony of Peter Culver and Carl Bushnell, for the reason that they were not qualified to express an opinion relative to his mental condition. Subdivision 10, Section 727, Or. L., provides that there may be received in evidence "the opinion of * * an intimate acquaintance respecting the mental sanity of a person, the reason for the opinion being given." Peter Culver was a comparatively close neighbor of the defendant and had known him about twenty years. He testified that he had observed defendant's actions and manner of speech most of the time he had lived in

that vicinity and since his arrest and confinement. The last time he saw defendant prior to the date of commission of the crime was in September, 1922. Carl Bushnell is a son-in-law of the defendant and had known him for a like number of years. He had often visited the home of the defendant and says he saw him twice each week during a period of three years. Both of these witnesses were, indeed, intimate acquaintances of the defendant within the meaning of the statute, and were competent to express an opinion concerning his mental condition. The competency of witnesses is a matter resting in the sound discretion of the court and the exercise thereof will not be reviewed excepting for abuse: *State* v. *Murray,* 11 Or. 413 (5 Pac. 55); *State* v. *Hansen,* 25 Or. 391 (35 Pac. 976, 36 Pac. 296); *State* v. *Roselair,* 57 Or. 8 (109 Pac. 865). Assuming, but not deciding, that error was committed as claimed, the testimony admitted was not prejudicial to the defendant. Neither Culver nor Bushnell expressed an opinion as to defendant's sanity. In their direct examination, so far as pertains to the matter under consideration, the record discloses the following:

"Q. Mr. Culver, during the times you have seen the defendant, between the occasions that you speak of as being the last time, and the time at Easter three years ago, you have seen him at various times between those times? A. I did. Q. Was there any difference in his mannerisms or speech or actions or movements during that time? A. No.

"Q. Now, Mr. Bushnell, during this time that you saw him, was there anything at all that called to your attention, a difference in the defendant's conduct in his affairs, or in his conversations, during that time that you knew him? A. Oh, he seemed to be a little more nervous now, that is all. Q. I do not mean now, Mr. Bushnell, I mean at the time that you ac-

tually visited him and knew him and conversed with him, was there any difference? A. No, I could not see any difference."

The record is free from error affecting the substantial rights of the defendant, and the judgment of conviction is therefore affirmed.          AFFIRMED.