Argued and submitted January 16; decision of Court of Appeals reversed, judgment of circuit court reversed in part, and case remanded to circuit court for further proceedings July 2, 2020

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## ISAIAH K. PAYNE,
aka Isaiah Khalil,
*Petitioner on Review.*

### (CC 15CR60083) (CA A166061) (SC S066919)

468 P3d 445

Defendant was charged with third-degree sexual abuse following a sexual encounter in a parked car. Defendant requested the uniform witness-false-in-part jury instruction after the complainant testified that she had not referred to defendant's race in her statement to police, but the responding officer testified that he had included the racial description as a direct quote from the complainant. The trial court declined to give the instruction, and the Court of Appeals affirmed. *Held*: (1) A "proper occasion" requiring a trial court to give the witness-false-in-part instruction in ORS 10.095(3) exists when, considering the testimony and other evidence viewed in the light most favorable to the party requesting the instruction, the trial court concludes that sufficient evidence exists for the jury to decide that at least one witness consciously testified falsely and that the false testimony concerns a material issue; (2) a reviewing court reviews the trial court's refusal to give a timely requested and legally correct witness-false-in-part instruction for legal error, overruling in part *Ireland v. Mitchell*, 226 Or 286, 359 P2d 894 (1961); (3) sufficient evidence supported giving the requested instruction; and (4) the trial court's error in refusing to give the instruction was not harmless.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

Sara F. Werboff, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

_____
 * Appeal from Multnomah County Circuit Court, Jerome E. LaBarre, Judge. 298 Or App 438, 447 P3d 71 (2019).

Joanna Hershey, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

NAKAMOTO, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.

**NAKAMOTO, J.**

During defendant's trial for third-degree sexual abuse, the complainant denied including a racial description of defendant in her statement to police and accused defense counsel of trying to make her look racist. The author of the police report testified that he had included that racial description in quotation marks because it was a direct quote from the complainant. Based on the difference between the officer's testimony and the complainant's testimony, defendant requested the uniform witness-false-in-part jury instruction. The trial court denied that request, and the jury found defendant guilty. The Court of Appeals affirmed, concluding that, even if the trial court had erred in failing to deliver the requested witness-false-in-part instruction, any error was harmless. *State v. Payne*, 298 Or App 438, 442, 447 P3d 71 (2019).

We allowed defendant's petition for review to address whether a trial court must give a requested witness-false-in-part jury instruction if there is evidence to support a conclusion that a witness consciously testified falsely. The first question on review is whether the trial court erred in refusing to give the requested instruction. Based on our statutory construction of the phrase "all proper occasions" in ORS 10.095, we conclude that the court should have given the instruction. The second question on review is whether the trial court's failure to give that instruction constituted harmless error. We conclude that it did not. Accordingly, we reverse the decision of the Court of Appeals and the judgment of conviction on the sexual abuse count, and we remand the case to the circuit court for further proceedings.[1]

## I.  BACKGROUND

The trial concerned an encounter between two young adults—the complainant, who is white, and defendant, who is Black—as they sat in defendant's parked car. After the

_____

[1] The state also charged defendant with unlawful possession of a firearm (Count 2), which stemmed from when defendant later was taken into custody. Defendant filed a demurrer on the grounds that the two counts were not properly joined under ORS 132.560. The circuit court granted the demurrer, and defendant eventually pleaded guilty to Count 2. That count is not relevant to the discussion in this case.

complainant reported the incident to the police two days later, the state charged defendant with third-degree sexual abuse. At trial, the defense theory was that the complainant had made a false report about a consensual sexual encounter. The key witnesses at trial were the complainant and defendant.

The complainant testified to the events of that night and explained that the sexual contact was unwanted: She knew defendant socially, and defendant had unexpectedly arrived at her and her mother's apartment that night. Defendant had recently been hit by a car and was using crutches. They began a conversation outside and then agreed to continue it in defendant's car. She removed defendant's hand from her thigh three times before he eventually exposed himself, took her hand, and put her hand on his penis, causing her to masturbate him. After defendant ejaculated on her hand, she got out of the car and wiped her hand on her pants. She estimated that she was in the car for 30 to 45 minutes and stated that she had not left the car because she was afraid of defendant, who on two occasions had shown her a gun that he owned. Her boyfriend, whom she described as a "jealous" person, and her mother encouraged her to go to the police.

On cross-examination, defense counsel questioned the complainant about her statement to the police. As pertinent here, the responding officer's report quoted the complainant as saying, "There is no doubt that if I ran, a strong muscular black man could catch me." The complainant denied referring to defendant's race and stated that she referred only to his size and muscles as a reason she had not left the car. Over the course of the exchange, the complainant responded that she "did not say it like that," that she "[didn't] remember saying those words," that "those words are not exactly [her] words," and that she "didn't say things like that; that [did] not sound like [her.]" The complainant also stated that she "didn't not [*sic*] say strong black man" and that she had heard defense counsel "yesterday trying to make [her] sound like [she] was racist."

After the complainant testified, defense counsel informed the court that he would be requesting the

witness-false-in-part instruction because he anticipated conflicting testimony from the police officer who made the report. The court described the instruction as "disfavor[ed]" and explained that "[a]ny presentation by an attorney requesting it *** requires [that attorney] to make a showing that it actually applies in this case for some reason."

The police officer subsequently testified. He confirmed on cross-examination that he had asked the complainant why she had not gotten out of the car and that her explanation, including the phrase "strong muscular black man," was a direct quote from the complainant.

Defendant, the sole witness in his defense, described the encounter differently than the complainant had: A mutual friend invited him to the gathering at complainant's apartment. Because a car had hit him while he was crossing a street several days earlier, he drove across the street to the complainant's apartment complex. He joined the gathering, and, when he was leaving, the complainant walked with him downstairs to his car. They sat in his car for 45 minutes to an hour. Their encounter was mutually flirtatious, and the complainant was a willing participant. He did not use any force or coerce the complainant to engage in sexual contact. He noticed that the complainant's body language changed only when her boyfriend pulled up in the spot next to his car.

Based on the conflict between the complainant's testimony and the police officer's testimony, defense counsel requested the uniform witness-false-in-part instruction. That instruction provides:

"Sometimes a witness may give incorrect or even inconsistent testimony. This does not necessarily constitute lying on the part of the witness. The witness's testimony may be an honest mistake or confusion. The witness may simply forget matters, or his or her memory of an event may contain honest inconsistencies or contradictions. Also, different witnesses may observe or recount the same event differently.

"However, if you find that a witness has intentionally lied in part of his or her testimony, you may, but are

not required to, distrust other portions of that witness's testimony.

"As jurors, you have the sole responsibility to determine which testimony or portions of testimony you will or will not rely on in reaching your verdict."

UCrJI 1029.

In support of his request, defense counsel argued that the uniform instruction did not direct the jury to conclude that any witness had lied and instead offered guidance. He also argued that the record supported giving the instruction because the conflicting testimony went beyond "just inconsistency." The prosecutor did not contend that the uniform instruction was legally incorrect or otherwise faulty. She argued that the court could not give it because the record reflected the complainant's mistake, confusion, or hazy recollection rather than willfully false testimony. The trial court refused to give the instruction, determining that defendant had "made an insufficient showing to trigger the giving of that instruction."

During closing argument, defense counsel repeatedly attacked the complainant's credibility. Among other things, he drew the jury's attention to the difference between her trial testimony and her statement to the police. Defense counsel also argued that the complainant was motivated to report the event as nonconsensual to save her relationship with her boyfriend and that the complainant's friends and mother and "society's expectations" supplied other reasons for the complainant to make a false report. The jury found defendant guilty.

Defendant appealed and, as relevant here, assigned error to the trial court's failure to give the uniform witness-false-in-part instruction. *Payne*, 298 Or App at 440. Although the parties at trial had not disputed whether the complainant's denial of what she had told the police was material, in the Court of Appeals, the state contended that (1) the trial court had correctly concluded that the evidence was insufficient to require giving the witness-false-in-part instruction and, in any event, (2) the "testimonial conflict was not material or significant."

The Court of Appeals affirmed defendant's conviction, explaining that it did not need to determine whether the trial court erred, because, ultimately, any error was harmless. *Payne*, 298 Or App at 440-41. It concluded that there was "little likelihood that the failure to deliver the uniform witness-false-in-part instruction affected the verdict, given the nature of the witness-false-in-part instruction itself and the record of the trial." *Id*. at 441. The court described the instruction as having "long been subject to criticism, given that it not only fails to require anything of the jury but also merely restates common sense and can consist of an improper comment on the evidence." *Id*. at 441. And, the court noted, defendant had been able to specifically address the inconsistency between the complainant's trial testimony and the police report during closing argument. *Id*. at 442. Thus, while expressing doubt about the necessity of the instruction in any case, the Court of Appeals concluded that any error in defendant's case was harmless. *Id*.

## II.   ANALYSIS

The uniform witness-false-in-part instruction that defendant requested, Uniform Criminal Jury Instruction 1029, is based on ORS 10.095(3). That statute provides that, "on all proper occasions," the jury is to be instructed "[t]hat a witness false in one part of the testimony of the witness may be distrusted in others[.]"

On review, the parties' arguments center around two legal issues. First, the parties dispute the predicate for a trial court to give the witness-false-in-part instruction, namely, what constitutes a "proper occasion" under ORS 10.095(3). Second, and relatedly, the parties have different views on the correct standard of review of a trial court's determination whether to give the instruction, which they draw from their respective readings of *Ireland v. Mitchell*, 226 Or 286, 359 P2d 894 (1961), and even earlier case law from this court. Boiled down, the issues the parties present concern the extent to which a trial court has discretion in determining whether it is proper to give the statutory instruction in ORS 10.095(3). Accordingly, we begin the analysis with the statute.

A. *The "Proper Occasion" for Giving the Statutory Instruction in ORS 10.095(3)*

In its entirety, ORS 10.095 provides:

"The jury, subject to the control of the court, in the cases specified by statute, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive. *They are, however, to be instructed by the court on all proper occasions*:

"(1)   That their power of judging of the effect of evidence is not arbitrary, but to be exercised with legal discretion, and in subordination to the rules of evidence;

"(2)   That they are not bound to find in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number, or against a presumption or other evidence satisfying their minds;

"(3)   *That a witness false in one part of the testimony of the witness may be distrusted in others*;

"(4)   That the testimony of an accomplice ought to be viewed with distrust, and the oral admissions of a party with caution;

"(5)   That in civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory, the finding shall be according to the preponderance of evidence;

"(6)   That in criminal cases a person is innocent of a crime or wrong until the prosecution proves otherwise, and guilt shall be established beyond reasonable doubt;

"(7)   That evidence is to be estimated, not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; and, therefore,

"(8)   That if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."

(Emphases added.) The eight jury instructions that trial courts are directed to give on "all proper occasions" are commonly referred to as "statutory instruction[s]." *See Ireland*, 226 Or at 288. By its terms, the statute mandates that a

trial court give a statutory instruction once it determines that the occasion is "proper."

Defendant asserts that, under ORS 10.095, a "proper occasion" requiring the witness-false-in-part instruction "exists when there is evidence from which a jury could conclude that a witness was consciously false and the false testimony was material." Defendant further argues that the trial court must view the record in the light most favorable to the requesting party when determining whether a "proper occasion" exists, and the trial court's determination about the sufficiency of the record is subject to review for whether it was legally correct.

The state responds that the statutory phrase "on all proper occasions" is facially ambiguous and that the witness-false-in-part instruction is disfavored. The state reads *Ireland* as creating a spectrum between manifest perjury, where the instruction would be required as a matter of law, and no inconsistent testimony, where giving the instruction would be an abuse of discretion. In the broad middle of that spectrum, the state asserts, a trial court has discretion to decide whether to give the instruction, and a trial court abuses its discretion only when inconsistent testimony pertains to a material issue and establishes intentional false testimony. In the state's view, it follows that the trial court's decision must be reviewed for an abuse of discretion.

We first turn to analyzing what the legislature intended by using the phrase "on all proper occasions," using the familiar statutory construction framework. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (instructing us to examine the text and context of the statute and any useful legislative history). The statute does not define "proper," the key word in the phrase, but it is axiomatic in Oregon that undefined words of common usage in a statute "typically should be given their plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

Although this court often consults dictionaries to help gain insight into what the legislature intended by using

a word, in this case, as might be expected, dictionary definitions provide little content for discerning what a "proper" occasion for giving a statutory instruction is. Because the phrase "all proper occasions" appeared in the statute when it was originally enacted, General Laws of Oregon, Civ Code, ch IX, title IX, § 835, pp 355-56 (Deady 1845-1864), we look to dictionaries from that era. "Proper" was defined, among other things, as, "suitable in all respects ; appropriate ; right ; fit[.]" *Webster's Int'l Dictionary* 1148 (unabridged ed 1907). And *Bouvier's Law Dictionary* contains a similarly broad and general definition of "proper": "[t]hat which is essential, suitable, adapted, and correct." John Bouvier, 2 *Bouvier's Law Dictionary* 394 (1860).

Thus, we agree with the state that the word "proper" in the statute is ambiguous. It can support the state's view that a trial court has discretion to decide that it is "proper" to give the instruction, and its choice is reviewed for an abuse of discretion. But a determination of what is "proper" can also encompass defendant's view that a trial court is called on to make a correct legal determination about the evidence that is reviewed for legal error.

We next examine the text in context. Among other things, context includes "prior opinions of this court interpreting the relevant statutory wording." *Ogle v. Nooth*, 355 Or 570, 584, 330 P3d 572 (2014). As the parties recognize, this court's prior opinions concerning the statute provide important context in this case.

Preliminarily, we note that this court has held that some of the statutory instructions in ORS 10.095 are applicable to trials generally, while others are tailored to specific circumstances that may or may not arise in a trial; accordingly, what constitutes a "proper occasion" depends on the requested statutory instruction. *See, e.g.*, *Godvig v. Lopez*, 185 Or 301, 320, 202 P2d 935 (1949) ("The giving or refusal to give a statutory instruction may or may not constitute error, depending in each case upon the nature of the issues presented by pleading and evidence."); *Hotelling v. Walther*, 174 Or 381, 388, 148 P2d 933 (1944) (some instructions "may properly be given in those cases only where a basis for them is found in the evidence," which is "not always easy to

determine").[2] For example, the burden of proof by a preponderance of the evidence in subsection (5) is applicable to any civil case, and so the statutory instruction is proper in any civil case; likewise, subsection (6), describing the presumption of innocence and the "beyond reasonable doubt" burden of proof, is proper to give in any criminal case. In contrast, subsection (8) applies by its terms in one circumstance: "if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party[.]"

On its face, the witness-false-in-part instruction in ORS 10.095(3) could fall into either category. It could be generally applicable in any trial. As the Court of Appeals observed, the instruction now states a "common sense" concept—that is, a witness who has lied under oath as to one thing could be lying as to others. *Payne*, 298 Or App at 441. Indeed, the model Ninth Circuit instructions on credibility of witnesses for both criminal and civil trials in federal court include a section informing jurors that, "if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said" or, "if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest." *Manual of Model Criminal Jury Instructions for the Ninth Circuit*, § 3.9 (2010, last updated Dec 2019); *Manual of Model Civil Jury Instructions for the Ninth Circuit*, § 1.14 (2017, last updated Dec 2019). But the statutory instruction in ORS 10.095(3) also could be limited to a specific circumstance that has happened during a trial: "a witness false in one part of the testimony of the witness."

This court has long held that the latter view of ORS 10.095(3) is correct, with the instruction being limited to a specific circumstance involving a witness who may have

---

[2] The lone exception is *Kern v. Pullen*, 138 Or 222, 6 P2d 224 (1931). In that case, this court held that the trial of every case was a "proper occasion" to give the statutory instructions and that all of them were mandatory upon a party's request, except for the appropriate choice of the specific instruction meant to relate only to a civil or criminal case. *Id.* at 224. That holding, however, was overruled 10 years later in *Fitze v. American-Hawaiian SS. Co.*, 167 Or 439, 449-50, 117 P2d 825 (1941).

knowingly testified falsely. *See, e.g.*, *Simpson v. Miller*, 57 Or 61, 65, 110 P 485 (1910). That is unsurprising given that the court's prior cases have addressed the originally enacted statutory instruction, which until 2013 required that jurors be told that, if a witness had deliberately given false testimony, then they were to distrust other parts of that witness's testimony: "[A] witness, false in one part of his testimony, is to be distrusted in others[.]" General Laws of Oregon, Civ Code, ch IX, title IX, § 835, p 356 (Deady 1845-1864); Or Laws 2013, ch 25, § 1 (changing "is to be distrusted" to "may be distrusted").

*Ireland v. Mitchell*, decided almost 60 years ago, is the latest of those cases. In *Ireland*, the plaintiff exposed "[m]inor inconsistencies" between the defendant's trial testimony and his deposition testimony from two years earlier. 226 Or at 289. Relying on those inconsistencies, the plaintiff requested the witness-false-in-part instruction, which at the time was contained in *former* ORS 17.250 (1959). This court stated the following test for determining a proper occasion for giving the statutory instruction: The trial court must "determine, from all the testimony, whether or not there has been sufficient evidence for the jury to decide that at least one witness consciously testified falsely." *Id.* at 293. And while *Ireland* did not explicitly add materiality to the test, it recognized that a trial court could properly consider the materiality of the falsehood. *Id.* at 294 ("While most of the authorities would further limit the application of the instruction to a material falsehood, the rule is probably one of convenience rather than one based on logic. The materiality of inconsistent testimony should be a matter for the trial court's discretion." (Citation omitted.)).

Earlier cases support the basic test articulated in *Ireland*. In *Simpson*, for example, one of the first cases examining the witness-false-in-part instruction, this court explained that the instruction applies only when there is "a state of facts from which the jury may be authorized to believe, and they must believe the evidence *willfully false* in some particular before they are authorized to discredit the whole of the evidence of such witness[.]" 57 Or at 65 (emphasis added). And in *State v. Goff*, 71 Or 352, 365, 142 P 564 (1914), this court explained that, when a witness had

"knowingly testified falsely as to a *material point in a case*," the instruction "requir[ed] the jury to distrust other parts of his evidence[.]" (Emphasis added.) The court in *Goff* required what *Ireland* recognized as a factor in other cases: that the false testimony relate to a material issue.

Thus, this court's case law long ago established that a "proper occasion" for giving the statutory instruction in ORS 10.095(3) requires a court's determination that the jury could find that a witness knowingly testified falsely about a material fact. More specifically, we hold that a "proper occasion" to give the witness-false-in-part instruction exists when, considering the testimony and other evidence a party has brought to the court's attention in support of the requested instruction, the trial court concludes that sufficient evidence exists for the jury to decide that at least one witness consciously testified falsely and that the false testimony concerns a material issue.[3]

Exactly how a trial court must proceed to apply that test during trial is the core issue presented. As mentioned, the state relies on *Ireland* in contending that a trial court has significant discretion to decide whether to give the witness-false-in-part instruction, even after concluding that sufficient evidence exists for the jury to decide that at least one witness consciously testified falsely and that the false testimony concerns a material issue, and so a trial court's ruling is reviewed for an abuse of discretion. Defendant reads *Ireland* as providing a trial court with limited discretion to assess the atmosphere of the trial, as it determines two legal questions: whether the record would permit the jury to find that a witness consciously testified falsely and whether the testimony was material. In defendant's view, this court's case law establishes that a trial court's ruling on a requested witness-false-in-part instruction is reviewed for legal error.

---

[3] We also clarify that the witness-false-in-part instruction is not disfavored in Oregon. The mandate of ORS 10.095 is that the instruction be given on "all proper occasions." Even in *Ireland*, which appears to be the genesis of the idea that the instruction is disfavored, *see* 226 Or at 292 (observing that some "authorities have questioned the wisdom" of giving the instruction "in routine cases"), the court explained that the instruction could "produce speculation and mischief in the jury room" if it were "given abstractly," 226 Or at 293, that is, unsupported by the record.

The confusion about what *Ireland* requires a trial court to do when a party requests the witness-false-in-part instruction stems from contradictory statements in the opinion about a trial court's "discretion" to decide whether to give the instruction. The court states at one point that it is "reversible error to refuse to give a particular statutory instruction upon timely request when there is a basis in the evidence for giving it." 226 Or at 291. Later in the opinion, the court introduces "discretion" while suggesting that the sufficiency of the evidence is a legal question with one correct answer:

> "The rule in Oregon is that *while the giving of the statutory instruction is discretionary with the trial court, it is an abuse of discretion to refuse a timely request for a statutory instruction if the evidence makes the instruction appropriate*. In each case it is necessary to review the evidence and to try to recapture, as much as is possible for an appellate court, the atmosphere of the trial which guided the trial judge."

226 Or at 292 (emphasis added). In other words, as defendant argues, even though *Ireland* characterized the failure to give a witness-false-in-part instruction when the evidence supported it as an "abuse of discretion," this court was describing legal error.

But in the next paragraph of the opinion, this court stated that, "[p]ut in its simplest form, the problem becomes one of defining the boundaries of judicial discretion." *Id.* The court then appeared to state an abuse-of-discretion standard of review: "In the first instance the trial judge must decide what is a proper occasion. This court must reverse if the record shows that the trial court abused its discretion." *Id.*

Defining the boundaries of a trial court's discretion, this court then explained that a trial court must decide whether to give the instruction in the many circumstances at trial that lie between two extremes, where giving the instruction is mandatory or is forbidden. At one end, "[t]he most obvious case in which the instruction would be required by the statute would be a case in which a witness has manifestly perjured himself." *Id*. at 292. At the other end, "[a]

case in which no witness has made inconsistent statements is not a proper case for the giving of the instruction." *Id*. at 292-93. In the middle is the more "difficult" case in which one or more witnesses made inconsistent statements. *Id*. at 292. The court cautioned that some inconsistent statements, those involving "[m]ere honest mistake, confusion, and hazy recollection," do not provide an occasion to invoke the instruction. *Id*. at 293.

Although that discussion suggests that a trial court usually has discretion to decide whether the evidence supports giving the statutory instruction, defendant contends that the court was reacting to a plaintiff whose position was that the instruction should be given in virtually every case where facts are in dispute and the testimony conflicts. *See Ireland*, 226 Or at 291 (characterizing the plaintiff's position). In defendant's view, "discretion" as used in the opinion refers to the court's responsibility to determine whether the record supports giving the instruction, and *Ireland* should be read as cautioning litigants and trial courts to discern the difference between mere conflicting testimony and evidence sufficient for a jury to conclude that a witness consciously testified falsely.

We conclude, however, as the state argues, that *Ireland* ultimately lands on an abuse-of-discretion standard of review. That understanding follows from the court's application of the test it had articulated. The court concluded that the "instruction requested could properly have been given" because the jury "could have found that the defendant's testimony did not ring true," yet held that the trial court's refusal to give the witness-false-in-part instruction was "within the legitimate scope of judicial discretion[.]" 226 Or at 294. If the court had applied a legal-error standard of review, it would have held that the trial court had erred in declining to give the instruction. Our reading also is confirmed by the concurring opinion, which disagreed "with the view expressed by the majority that the trial court has any discretion in determining whether or not the instruction should be given when requested by a party." *See Ireland*, 226 Or at 296-97 (Perry, J., specially concurring).

Nevertheless, this court no longer applies an abuse-of-discretion standard when reviewing a trial court's refusal to give a requested jury instruction.[4] A recent example in a civil case is *Ossanna v. Nike, Inc.*, 365 Or 196, 199, 445 P3d 281 (2019), in which we stated that we "review a trial court's failure to give a requested jury instruction for errors of law, and evaluate the evidence in the light most favorable to the establishment of the facts necessary to require the instruction." (Citations omitted.) Another recent example in a criminal case is *State v. McNally*, 361 Or 314, 320, 392 P3d 721 (2017), in which we applied a legal-error standard of review and explained that "[a] criminal defendant is entitled to have the jury instructed in accordance with his or her theory of the case if the instruction correctly states the law and there is evidence to support giving it."

The application of the legal-error standard of review is not limited to recent cases. With one arguable exception, for decades, this court has applied a legal-error standard—not review for an abuse of discretion—when reviewing a trial court's refusal to give a requested jury instruction.[5] In 1979, we stated in *State v. McBride*, 287 Or 315, 319, 599 P2d 449 (1979), that a "criminal defendant is entitled to have his theory of the case presented to the jury if there is evidence to support it," and that the trial court "is not vested with discretion to refuse an instruction supported by the evidence." In *State v. Langley*, 331 Or 430, 452, 16 P3d 489 (2000), we stated: "This court reviews a trial court's refusal to give a requested jury instruction for error as a matter of law." An example of a civil case in which the same principles apply is *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106,

---

[4] However, we review a trial court's choice among requested jury instructions "that supply the same information" for an abuse of discretion. *See, e.g.*, *State v. Moore*, 324 Or 396, 427, 927 P2d 1073 (1996). Our discussion in this case does not affect the standard of review in that situation.

[5] In *State v. McDonnell*, this court stated that "when we review a trial court's decisions in its choice of instructions, we normally will look only for any abuse of discretion." 313 Or 478, 496, 837 P2d 941 (1992) (citing *Ireland,* 226 Or at 292). That case involved the "weaker or less satisfactory evidence" statutory instruction and one defining the term "conscious." *Id*. Although this court stated that it would apply an abuse-of-discretion standard of review, a closer reading of that case demonstrates that we reviewed the trial court's decision on instructions for legal error, and the court held that the record did not support the defendant's request for the "weaker and less satisfactory evidence." *Id*. at 503.

957 P2d 147 (1998) (holding that the "parties in a civil action are entitled to jury instructions on their theory of the case if their requested instructions correctly state the law, are based on current pleadings in the case, and are supported by evidence").

Defendant relies on those principles in the case law since the decision in *Ireland* and on *Denton v. Davis*, 191 Or 646, 233 P2d 213 (1951), a decision of this court before *Ireland*, to advance his position that a trial court cannot deny a request for the witness-false-in-part instruction when it is supported by the evidence in the record. Defendant cites *Denton* as additional context for understanding ORS 10.095. In that case, after the trial court had given the instructions to the jury, but before the jury retired for deliberations, the plaintiff's counsel excepted to the instructions because they did not include the "witness counting" statutory instruction, now found in ORS 10.095(2). *Denton*, 191 Or at 651-52. The trial court acknowledged that the plaintiff's counsel might be correct but declined to give the instruction at that point to avoid calling too much attention to it. *Id.* at 652. This court reversed the judgment in favor of the defendants because of the trial court's refusal to give the instruction when the number of defense witnesses "greatly outnumbered" those for the plaintiff. *Id.* at 652-53. The court emphasized that the refusal was not discretionary: "Upon a proper request for the giving of a statutory instruction, or when a timely exception is taken, the court must, on all proper occasions, give such instruction, and a failure so to do constitutes error. It is not a matter of discretion." *Id.*

Defendant does not explicitly ask us to overrule the portion of *Ireland* that adopted an abuse-of-discretion standard of review. Instead, defendant contends that to read *Ireland* in that way conflicts with the holding in *Denton* and now well-established law to the contrary. Nevertheless, we are presented with conflicting cases, and defendant contends that the abuse-of-discretion standard of review, which *Ireland* applied, does not apply, implicating *stare decisis* concerns. *See Multnomah County v. Mehrwein*, 366 Or 295, 314-15, 462 P3d 706 (2020) (describing inconsistency between earlier decisions from this court as part of *stare decisis* inquiry).

This court assumes that its earlier cases were correctly decided. *State v. Ciancanelli*, 339 Or 282, 290, 121 P3d 613 (2005). Even so, we remain "willing to reconsider cases when the legal or factual context has changed in such a way as to seriously undermine the reasoning or result of earlier cases." *Farmers Ins. Co. v. Mowry*, 350 Or 686, 698, 261 P3d 1 (2011). Such reconsideration does not necessarily mean that the earlier case was wrong when it was decided. Instead, "the evolution of the common law may lead this court to conclude that the earlier case should no longer be followed." *Mowry*, 350 Or at 698-99 n 5.

This court's standard of review of a trial court's decision on whether to give a requested jury instruction is a common-law rule.[6] Since our decision in *Ireland*, this court's case law concerning the standard of review to be applied to a trial court ruling declining to give a timely requested jury instruction has changed.

As noted earlier, the instructions in ORS 10.095 are commonly referred to as "statutory" instructions. Earlier cases decided before *Ireland* also intermittently referred to some of those instructions as "cautionary" instructions. *Moe v. Alsop*, 189 Or 59, 71, 216 P2d 686 (1950), *overruled in part on other grounds by Bay Creek Lumber Co. v. Cesla*, 213 Or 316, 321-22, 324 P2d 244 (1958) (describing the instruction now contained in ORS 10.095(4) as a "statutory cautionary instruction"); *Fitze v. American-Hawaiian SS. Co.*, 167 Or 439, 449, 117 P2d 825 (1941) (examining "all of the cautionary instructions contained in [ORS 10.095]"). The "cautionary" descriptor was also used to describe other jury instructions not contained in ORS 10.095.[7] The early cases decided before *Ireland* almost uniformly describe the standard of review of a trial court's decision to give a "cautionary"

---

[6] The source of the standard of review that this court applies to a given case depends on the nature of the case. The relevant standard can come from the Oregon Constitution, a statute, or common law. *See Couey v. Atkins*, 357 Or 460, 492, 355 P3d 866 (2015).

[7] *See Dimitroff v. State Ind. Acc. Com.*, 209 Or 316, 336-37, 306 P2d 398 (1957) (instruction that jury had a duty to avoid guessing or speculation); *State v. Peare*, 113 Or 441, 446, 233 P 256 (1925) (instruction that jury should not allow itself to be swayed by passion or prejudice); *Scheurmann v. Mathison*, 67 Or 419, 424, 136 P 330 (1913) (instruction informing jury to not allow sympathy for the plaintiff to influence their verdict).

instruction—whether statutory or not—as an abuse of discretion. *See Moe*, 189 Or at 71; *Fitze*, 167 Or at 449 (citation omitted); *State v. Peare*, 113 Or 441, 446, 233 P 256 (1925); *Scheurmann v. Mathison*, 67 Or 419, 424, 136 P 330 (1913). Those cases, and particularly *Fitze*, which this court cited in *Ireland*, lend support to the holding in *Ireland* that the abuse-of-discretion standard of review applied to a trial court's decision to give the statutory witness-false-in-part instruction.

But as we described, this court no longer reviews a trial court's decision to refuse a timely requested jury instruction for an abuse of discretion. That evolution also can be seen specifically in the context of the statutory instructions. *Langley*, a case from 2000, and *Moe*, a case from 1950, illustrate that the standard of review of a trial court's refusal to give a requested statutory instruction has changed. *Langley* involved a refusal to give accomplice corroboration instructions, including the statutory instruction contained in ORS 10.095(4), which states in part that "the testimony of an accomplice ought to be viewed with distrust." *Langley*, 331 Or at 452. This court stated and applied a legal-error standard of review, holding as a legal matter that the defendant was not entitled to the accomplice corroboration instructions during the penalty phase of his aggravated murder trial, because those instructions related to whether a defendant could be convicted of a crime, not the appropriate punishment once he was convicted. *Id*. at 453. In contrast, in *Moe*—which involved part of the same statutory instruction contained in ORS 10.095(4), without the additional accomplice corroboration requirement of ORS 136.440—this court applied a discretionary standard of review. 189 Or at 71.

This court held in *Ireland* that a trial court has discretion to refuse to give the witness-false-in-part instruction even when the party requesting it correctly points to evidence in the record from which the jury could conclude that a witness consciously testified falsely regarding a material matter, with appellate courts limited to reviewing a refusal for an abuse of discretion. That holding is inconsistent with our current standard of review and is no longer a correct statement of the law in Oregon. Accordingly, that part of

*Ireland* applying an abuse-of-discretion standard of review is overruled.

Defendant also argues that we must view the evidence in the light most favorable to him, the requesting party. We agree with defendant that a trial court and a reviewing court must view the evidence in the light most favorable to the party requesting the instruction. *See State v. Ashkins*, 357 Or 642, 648, 357 P3d 490 (2015) (a jury instruction is "appropriate if it correctly states the law and is supported by evidence in the record, when the evidence is viewed in the light most favorable to the party requesting the instruction"); *State v. Oliphant*, 347 Or 175, 178, 218 P3d 1281 (2009) ("When discussing defendants' requested instructions, we view the facts in the light most favorable to defendants.").

In summary, a "proper occasion" to give the statutory witness-false-in-part instruction exists when, considering the testimony and other evidence viewed in the light most favorable to the party requesting the instruction, the trial court concludes that sufficient evidence exists for the jury to decide that at least one witness consciously testified falsely and that the false testimony concerns a material issue. And, we reiterate that those are legal conclusions and that a reviewing court will apply a legal-error standard of review to the trial court's refusal to give a timely requested and legally correct witness-false-in-part statutory instruction.

B.  *Legal Error*

Turning to the facts of this case, we first look at whether there was sufficient evidence for the jury to decide that at least one witness consciously testified falsely. Viewing the evidence in the light most favorable to defendant, the party requesting the instruction, sufficient evidence existed. Indeed, the state agreed in its brief to this court that "the evidence permits an inference that the [complainant] consciously testified falsely."

The complainant was present when defense counsel repeatedly used the phrase "black man" when describing what she had said to the police. And she thought defense

counsel's use of those words painted her in an unflattering light; she testified that she "heard [defense counsel] actually yesterday trying to make [her] sound like [she] was racist." The complainant denied using the words "black man" on multiple occasions. Over the course of cross-examination, the complainant testified that "[she] did not say it like that," that she "[didn't] remember saying those words," and that "those words are not exactly [her] words." When confronted with the fact that the reporting officer had put those words in quotes, the complainant maintained that any discrepancy was due to the officer's error in writing down her statement. She stated that "if that's what he wrote then, that's different from right now because I didn't not [*sic*] say strong black man," and that "[i]f that's how he phrased it, maybe that's how he wrote it up." Considered in the light most favorable to the defendant, the complainant's repeated denials amount to more than an honest mistake, confusion, or hazy recollection. When viewed as a whole, those statements are an unequivocal denial that she ever referred to defendant's race as a reason for why she did not leave the car, but the reporting officer testified that he directly quoted the complainant. A jury could credit the officer's testimony and conclude that, as opposed to simply forgetting what she had said to the officer, the complainant had a reason to lie and consciously testified falsely about her statement.

The false testimony was also material. Defendant's theory of the case was that the complainant had lied about her reasons for not leaving the car and the entire nature of the encounter with him to protect her relationship with her boyfriend and to conform to her mother's as well as society's expectations. We therefore have no problem concluding that a falsehood pertaining to the complainant's reasons for not leaving the car would be material. Because the evidence was sufficient for the jury to conclude that the complainant had consciously testified falsely, and that testimony was about a material issue, we hold that the trial court erred when it refused to give the witness-false-in-part instruction.

C.   *Prejudicial Error*

Having concluded that the witness-false-in-part instruction should have been given in this case, we address

the state's alternative argument that the trial court's failure to give the instruction constituted harmless error. Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm the judgment below if we determine that there was "little likelihood that the error affected the verdict[.]" *State v. Davis*, 336 Or 19, 33, 77 P3d 1111 (2003). To make that determination, "the court considers the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *Ashkins*, 357 Or at 660.

The state offers three reasons that any error was harmless: (1) the jury was adequately instructed on how to evaluate the credibility of witnesses, (2) the instruction "demands nothing of the jury and merely conveys a common-sense principle," and (3) defendant was not prevented from arguing that the complainant lied and that the jury should therefore discount her testimony entirely. For the reasons discussed below, we conclude that the trial court's refusal to give the witness-false-in-part instruction that defendant requested was not harmless.

The jurors were instructed that, "[i]n evaluating each witness's testimony," they could consider "[t]he manner in which the witness testified," "the nature or quality of the witness's testimony," "evidence that contradicts the testimony of the witness," and "evidence concerning the bias, motives, or interests of the witness." According to the state, those instructions, coupled with the general instructions that the jury had the "sole responsibility to make all of the decisions about the facts in the case" and was required to "evaluate the evidence to determine how reliable or how believable that evidence is," adequately told the jury of its duty to assess the complainant's credibility.

It is true that courts do not need to give requested instructions that are "merely enlargements upon instructions given." *Laubach v. Industrial Indemnity Co.*, 286 Or 217, 225, 593 P2d 1146 (1979). However, the general instructions did not tell the jury what it could do if it determined that a witness consciously testified falsely and so did not constitute the equivalent of the witness-false-in-part instruction

that defendant requested. Furthermore, if we accepted that the general instructions served the same function as the witness-false-in-part instruction, an instruction that the legislature has decided should be given on all "proper occasions," there would never be a case in which the failure to give that instruction could be more than harmless error.

The state next argues that the witness-false-in-part instruction merely reiterated common sense and so would have been of little value to the jury and defendant. We reject the state's argument regarding the instruction's lack of practical value for jurors generally and as applied in this case.

First, the state's argument is at loggerheads with ORS 10.095, which reflects a legislative judgment that we are not free to ignore—that the witness-false-in-part instruction has sufficient value that it must be given on "all proper occasions." Second, the witness-false-in-part instruction serves an important advisory function because it informs a jury of its duty to scrutinize a witness's testimony, undercuts the presumption that sworn testimony is truthful, and permits the jury to draw an inference that a willfully false witness who has violated her oath in one particular may well have done so in others. As the concurring opinion in *Ireland* explained, without the instruction, a jury has "no guide as to the manner in which they may treat the testimony of one whom they believe to be testifying falsely." 226 Or at 297 (Perry, J., specially concurring).

And in this case, the instruction was especially important for defendant. The defense theory was that the sexual contact was consensual and that the complainant had falsely reported the contact as nonconsensual. The jury necessarily needed to decide whether it believed defendant's or the complainant's version of events. An instruction that informs the jury of its ability to distrust other portions of a witness's testimony, if it concludes that the witness testified falsely, would therefore be important in assisting the jury in making that determination.

Finally, the state asserts that defendant "essentially made a witness-false-in-part argument to the jury" during closing argument and that the jury could have accepted

that argument. The Court of Appeals similarly noted that defendant's closing argument openly challenged the complainant's credibility, and it concluded as a result that any error was harmless. *Payne*, 298 Or App at 442. In response, defendant argues that (1) this case required jurors to determine the credibility of defendant and the complainant and that the jury had to find the complainant credible for the state to meet its burden of proving defendant's guilt beyond a reasonable doubt and (2) the instruction would have provided concrete information to jurors on how to assess possible false testimony by the state's key witness.

We agree with defendant that closing argument was not an adequate substitute for the witness-false-in-part instruction that should have been given. Jury instructions matter; through instructions, the trial court tells the jury the law applicable to the case. *Ossanna*, 365 Or at 221. We have previously explained that "neither the sufficiency of the evidence nor the completeness of counsel's arguments concerning that evidence is a substitute for the sufficiency of the instructions." *State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990). Here, the trial court instructed the jury that the lawyers' statements and arguments were not evidence and that the jury should base its verdict on the evidence. The defense theory was that the complainant was lying about the nature of her encounter with defendant, and the instruction would have provided authority for defendant to argue that the jury should distrust the complainant's version of events. We cannot conclude that there was little likelihood that the error affected the verdict. Accordingly, the judgment of the circuit court as to Count 1 of the indictment must be reversed.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.