No. 412 May 7, 2025 397

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANDREW WILLIAM JONES,
*Defendant-Appellant.*

Washington County Circuit Court
22CR18320; A181362

Erik M. Bucher, Judge.

Submitted April 3, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Andrew D. Robinson, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rebecca M. Auten, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

In this criminal appeal, defendant challenges his conviction for one count of second-degree sexual abuse, ORS 163.425, two counts of fourth-degree assault, ORS 163.160, and one count of coercion, ORS 163.275, for conduct alleged by his then-wife. In two assignments of error, he argues that the trial court erred by (1) "sustaining the state's objection to defendant's cross-examination of [the victim] on whether she had stated in prior testimony that she expects defendant to be able to read her mind," and (2) declining to give the witness-false-in-part jury instruction. Because defendant's first assignment is unpreserved, and the court did not err in declining to give the instruction, we affirm.

We begin with defendant's first assignment of error. To preserve an issue for appeal, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). One relevant question to assess preservation is, "[w]ould the trial court be taken aback to find itself reversed *on this issue, for this reason*?" *State v. Skotland*, 372 Or 319, 329, 549 P3d 534 (2024) (emphasis in original).

Before trial, the state moved to exclude evidence of a personality test that the victim had taken with a therapist at some point during her relationship with defendant in which she "identified with several personality traits such as guilting others." She later discussed this test with defendant and communicated that, during their relationship, she had been "struggling with distorting reality, using guilt to manipulate her partner, expecting [defendant] to be able to read her mind, things like this." Defendant sought to introduce the victim's statements to defendant, not the test itself, as impeachment evidence, because "it goes to memory. It goes to her ability to perceive reality." The state argued that her statements identifying herself as having certain character traits is "clearly improper character evidence under [OEC] 404." The court ruled that the defense could impeach the victim with her own statements about her own perception

around the time of the alleged conduct and inquire into whether she distorted reality, but it could not bring up particular instances where she did so.

At trial, before the victim's cross-examination, the court and parties again discussed the parameters of defendant's questioning. Defense counsel clarified that the questioning could go into issues regarding her "perception of reality" for impeachment, and the trial court agreed. On cross-examination, defense counsel asked the victim a series of questions about her perception of reality and unrealistic expectations of defendant, the final of which was about her expectation that he was "able to read [her] mind." The state objected on grounds of the court's ruling in the pretrial hearing, to which defense counsel argued that the evidence was admissible for impeachment purposes. The court overruled the objection and allowed the defense to proceed with the line of questioning, "but just briefly," because it was "saying in general that she has distorted reality" and the question was related to her "recollection or distorting her recollection in general." The defense informed the court that that was all of its questions. The state moved to strike the final question as improper character evidence and irrelevant. The defense argued that it concerned the victim's "perception of reality," in response, the trial court explained that it was defendant's knowledge about her consent that was at issue, not the victim's perception of reality. Defense counsel responded that "it goes directly to the issue of consent," without further explanation. The trial court sustained the state's objection and struck the last question.

On appeal, defendant argues that the trial court erred by excluding evidence that the victim stated that she expected defendant to be able to read her mind because it was not character evidence and, alternatively, under OEC 404(2)(b),[1] it was admissible as evidence of a "pertinent character trait." He argues that if the victim expected defendant

---

[1] OEC 404(2)(b) provides:

"(2)  Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

"* * * * *

to be able to read her mind, "she might have expected him to read her mind about whether she consented to sexual intercourse on the charged occasions. If so, she was less likely to have effectively communicated to defendant that she did not consent; indeed, she may not have communicated that lack of consent at all." Relying on *State v. McKay*, 309 Or 305, 787 P2d 479 (1990), he argues that the evidence was akin to evidence of a defendant's sexual inclination towards a specific victim—which is not character evidence under OEC 404(3)—and he characterizes it as "evidence of one person's attitude towards another specific person[.]"

However, defendant never argued to the trial court that the evidence was not character evidence, nor that it was admissible under OEC 404(2)(b). He did not argue that the evidence was relevant to the issue of whether the victim communicated her consent to defendant. Given our review of the record, defendant did not make the arguments at trial that he makes on appeal and, even assuming that the trial court's decision was error, the trial court was not afforded the opportunity "to consider and correct the error immediately," had correction been warranted. *Wyatt*, 331 Or at 343.[2] Accordingly, defendant's arguments are not preserved, and we do not further address them.

Regarding defendant's second assignment of error, we review a trial court's refusal to give the witness-false-in-part instruction for legal error, viewing the evidence in the light most favorable to the party requesting the instruction. *State v. Payne*, 366 Or 588, 607, 468 P3d 445 (2020). A jury is "to be instructed by the court on all proper occasions *** [t]hat a witness false in one part of the testimony of the witness may be distrusted in others[.]" ORS 10.095(3). A "proper occasion" to give the witness-false-in-part instruction exists when, "considering the testimony and other evidence a party has brought to the court's attention in support of the requested instruction," the record permits "the jury to decide that at least one witness consciously testified falsely and that the false testimony concerns a material issue."

---

"(b) Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same ***."

[2] Defendant has not requested that we review for plain error.

*Payne*, 366 Or at 600. "Evidence of a witness's false testimony must amount to more than an honest mistake, confusion, or hazy recollection." *State v. Daly*, 308 Or App 74, 79, 479 P3d 335 (2020) (internal quotation marks omitted).

Defendant argues that, viewed in the light most favorable to defendant, the jury could conclude from the evidence that the victim had consciously testified falsely on two occasions: "when she testified that she had not discussed a rape fantasy with defendant after the initial sexual abuse allegation, and when she testified that she had never been disappointed about testing negative on a pregnancy test." The trial court declined to give the instruction because, although the evidence was "good for impeachment, it's good for argument that she's lying and things of that nature," how it had heard the testimony, "you could just as easily think that she's mistaken as far as how the events occurred, and, quite frankly, what the question of the attorney was actually asking for."

On this record, the trial court did not err in declining to give the witness-false-in-part instruction. Regarding the timing of her discussion of the rape fantasy, the record shows that the victim was confused by defense counsel's questions, unsure of the specific dates, and did not recall the precise order of events, which does not amount to evidence that she consciously lied. Regarding her disappointment about a negative pregnancy test, the victim corrected her testimony immediately upon being shown her journal entries from the time period—years before her testimony. Viewing the evidence in the light most favorable to defendant, we cannot say that either of these instances of inconsistent testimony amounted to more than "an honest mistake, confusion, or hazy recollection," such that the trial court was required to provide the witness-false-in-part jury instruction. *Daly*, 308 Or App at 79.

Affirmed.