Argued and submitted October 21, 2022; Count 1 reversed and remanded, remanded for resentencing, otherwise affirmed June 28, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DERRICK MICHAEL BROSY,
*Defendant-Appellant.*

Jefferson County Circuit Court
20CR37634; A174881

533 P3d 378

Defendant appeals from a judgment of conviction for second-degree assault, attempted strangulation, fourth-degree assault, and harassment. On appeal, defendant first argues that the trial court erred in admitting testimony that suggested that he had used drugs the day of the incident. Defendant also argues that the trial court failed to correctly instruct the jury on the mental state requirement for the physical injury element and the dangerous weapon element of second-degree assault. *Held*: The trial court did not err in admitting the testimony. The trial court did err in failing to instruct the jury on the applicable mental state for both the dangerous weapon and physical injury elements of the second-degree assault count and, under the circumstances of the case, the error with respect to the dangerous weapon instruction was not harmless.

Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

Annette C. Hillman, Judge.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General; Benjamin Gutman, Solicitor General; and Shannon T. Reel, Assistant Attorney General.

Before Ortega, Presiding Judge, and Hellman, Judge, and Landau, Senior Judge.

ORTEGA, P. J.

Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

## ORTEGA, P. J.

Defendant appeals from a judgment of conviction for second-degree assault constituting domestic violence (Count 1), attempted strangulation constituting domestic violence (Count 3), fourth-degree assault constituting domestic violence (Count 4), and harassment (Count 5).[1] On appeal, defendant raises nine assignments of error. In his first three assignments, defendant challenges the trial court's admission of testimony suggesting that he had used drugs the day of the incident and the court's giving of a related limiting jury instruction. We conclude that the trial court did not err. In his remaining six assignments of error, defendant argues that, with respect to the second-degree assault count, the trial court gave erroneous instructions on the mental state requirement for the physical injury element and the dangerous weapon element of the offense. The state concedes that, under *State v. Fletcher*, 263 Or App 630, 330 P3d 659 (2014), and *State v. Owen*, 369 Or 288, 505 P3d 953 (2022), the trial court erred, but argues that the error was harmless. We agree with and accept the state's concession that the trial court erred. We further conclude, however, that under the circumstances of this case, the error with respect to the dangerous weapon instruction was not harmless. Accordingly, we reverse and remand the conviction for second-degree assault (Count 1), remand for resentencing, and otherwise affirm.

We first recount the relevant historical facts. In July 2020, defendant and L were in an intimate relationship and temporarily living with L's mother in her apartment. On the day of the incident, defendant drove to another town for an interview. Sometime after the interview, he called L and said that "he [had] picked up some people, and they were doing drugs in the car" and that "somebody ransacked the car when he went into the store." A few hours later, he called L and said that he fell off a curb and hurt his foot. L told defendant to come home, and when he did that evening, he and L went to the hospital. When they arrived at

---

[1] The jury also found defendant guilty of unlawful use of a weapon (Count 2), which the court merged with the guilty verdict on Count 1. The jury acquitted defendant of interfering with a peace officer (Count 6).

the hospital, L noticed that there were "little, white pills" and syringes "all over" the back seat of the car. At the hospital, defendant learned that he had broken one ankle and sprained the other. Defendant was given aluminum crutches and was released from the hospital.

L and defendant returned to the apartment, which is on the second floor, sometime after midnight. Defendant was being loud and talking "gibberish" and when L asked what was wrong, he said that "he might have done meth with some people." Defendant wanted L to come with him to the store to get cigarettes, but she refused and told him to leave. He did, but when he attempted to go down the stairs with his crutches, he fell and injured his head. L heard the fall and went outside to see what happened. Defendant was at the bottom of the first landing, and his head was bleeding. He yelled at L to help him, and she went to the car to remove her belongings, but it was locked. As recorded on the apartment security video, defendant then approached L using his crutches and said, "You want to see the size of the gash on my head? Here. Let me give it to you." He then swung one of the crutches, striking the car and the left side of L's head. L screamed and yelled for someone to call the police. Defendant then put his hands on L's neck and choked her. Defendant let go and grabbed L's arm, and she accused defendant of hitting her. He denied that, saying that he had hit the car with the crutch and it bounced.

The police then arrived. At the scene, they observed that L had a swollen lump on the left side of her forehead, abrasions on her neck and upper chest, and complained that her left arm hurt. Defendant denied that the crutch hit L. He was transported to the hospital for his head injury, where he was arrested.

In his first three assignments of error, defendant argues that the trial court erred in denying his motion to exclude testimony from L that defendant said that he might have used meth that day and that she saw white pills and syringes in defendant's car and, as a consequence, erred in giving a limiting jury instruction about that evidence. At the start of trial, defendant objected to the admission of any evidence of his drug use, arguing that that was an

irrelevant prior bad act, under OEC 404, and unduly prejudicial, under OEC 403. The trial court concluded that statements defendant made to L "at or near the time of the incident" were admissible and, given the proximity in time to the incident, L's observations about the pills and syringes in defendant's car were also admissible. The court also determined that the evidence was not overly prejudicial meriting exclusion from the trial. Later, during the settling of jury instructions, defendant asked the court to give a limiting jury instruction with respect to that evidence, and the court gave the requested instruction.[2]

On appeal, defendant argues that the evidence was irrelevant and not connected to his mental state because the state did not show any facts connecting the evidence to the incident, such as that he still was or could be under the influence and how it would have affected him. Defendant also argues that any probative value of the evidence was outweighed by its unfair prejudice because it was inflammatory and left the jury to speculate about whether he was under the influence. Finally, defendant argues that the error was not harmless and that the limiting instruction did not make it so.

We reject defendant's arguments based on OEC 404 because the evidence was not inadmissible character evidence. OEC 404(3) provides, in part, that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Defendant's statement to L that he may have taken meth was made in response to her asking him what was wrong with him. That statement was not admitted for the purpose of proving defendant's character under OEC 404(3); it was part of the ongoing domestic

---

[2] The court instructed the jury as follows:

"You have heard testimony from [L] that she saw small, white pills and syringes in [defendant's] car and that he told her people had used drugs in his car. Further, you heard testimony from [L] that [defendant] told her he may have used meth. You may only consider this evidence for motive, intent, or plan as to whether the defendant committed the crimes alleged in this case.

"Specifically, you may not consider this evidence for the purpose of drawing the inference that, because the defendant engaged in the prior conduct, he may be guilty of the crimes alleged in this case."

incident between defendant and L and was made to explain his behavior to L—that is, it was direct evidence of defendant's state of mind. The pills and syringes that L observed in defendant's car were similarly part of his ongoing course of conduct that day, leading up to the incident between them, including that he told L earlier that day that "he picked up some people, and they were doing drugs in the car." We also conclude that the trial court did not abuse its discretion in admitting the evidence over defendant's OEC 403 objection. *See, e.g.*, *State v. Sewell*, 257 Or App 462, 468-69, 307 P3d 464, *rev den*, 354 Or 389 (2013) (describing the abuse of discretion standard of review as it applies to OEC 403). Finally, because the trial court did not err in admitting the evidence, it also did not err in giving defendant's requested limiting instruction.

We turn to defendant's assignments of error four through nine, which challenge the instructions given to the jury for the second-degree assault count. Defendant asserts that the trial court erred in failing to instruct the jury on a mental state for both the "dangerous weapon" and "serious physical injury" elements of the offense. The state concedes that the trial court erred in failing to give the instructions that defendant requested as set out in defendant's assignments of error five, eight, and nine. We agree and accept the state's concession. Under *Fletcher*, a trial court errs when it fails to instruct the jury that, to establish second-degree assault under ORS 163.175(1)(b), the state must prove that the defendant knew that the weapon used was a "dangerous weapon." 263 Or App at 633; *see also State v. Higginbotham*, 300 Or App 395, 396, 450 P3d 1042 (2019) (same). Likewise, under *Owen*, a trial court errs when it fails to instruct a jury on the culpable mental state that applies to the serious physical injury element in second-degree assault, which is, at a minimum, criminal negligence. 369 Or at 322. Because the trial court did not instruct the jury as required by those cases, it erred.

The state argues that we should nonetheless affirm defendant's conviction for second-degree assault, because the instructional error was harmless. Because it is dispositive, we address only the court's failure to correctly instruct

the jury on the dangerous weapon element and conclude that that error was not harmless.

In determining whether instructional error was harmless, "we consider the instructions 'as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue.'" *Owen*, 369 Or at 323 (quoting *State v. Payne*, 366 Or 588, 609, 468 P3d 445 (2020)). A party is prejudiced by instructional error if "the trial court's failure to give the requested instruction probably created an erroneous impression of the law in the minds of the members of the jury, and if that erroneous impression may have affected the outcome of the case." *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106-07, 957 P2d 147 (1998).

Defendant argues that the error was not harmless because the jury was never instructed that it had to find that defendant knew that the crutch was a dangerous weapon that would likely cause serious physical injury if used in the manner in which he used it. He points out that no other instruction touched on that element of the offense and that it was that element which elevated the charge to second-degree assault. He argues that failing to instruct on an essential element of the offense has an inherent tendency to affect the outcome, and further contends that the fact that his actions threatened some kind of injury to L is not the same as requiring the jury to find that defendant knowingly used the crutch in a manner capable of causing death or serious physical injury.

The state asserts that the error was harmless because the case did not center on whether the crutch was a dangerous weapon. The state argues that defendant did not assert in closing that he did not know the crutch was a dangerous weapon in the way in which it was used and instead focused on whether he knowingly caused L's injury. Under those circumstances, the state maintains, a correct jury instruction would not have affected the jury's assessment of the case. The state also asserted at oral argument that, in finding defendant guilty of unlawful use of a weapon, the jury necessarily found that defendant knew the crutch was a dangerous weapon.

As charged in this case, to convict defendant of second-degree assault, the jury had to find that defendant "knowingly cause[d] physical injury to another by means of a *** dangerous weapon." ORS 163.175(1)(b). Putting that together with the applicable statutory definitions, for the dangerous weapon element, the jury had to find that defendant acted with an awareness that the aluminum crutch, under the circumstances in which defendant used it against L, was readily capable of causing death, a substantial risk of death, protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ.[3]

The jury was instructed that it had to find that defendant "knowingly caused physical injury to [L] by means of a dangerous weapon." It was also instructed on the statutory definitions of "knowingly," "dangerous weapon," "physical injury," and "serious physical injury," and that "knowingly caused physical injury" "means that the person acts with an awareness that his conduct is of a nature that would cause physical injury."[4] The jury, however, was not instructed that defendant had to know that the crutch was a dangerous weapon; indeed, the court explicitly ruled that the jury did not have to so find in settling the jury instructions. As a result, defendant could not argue in closing that his knowledge that the crutch was a dangerous weapon was an issue in dispute. Given that, we are not persuaded by the state's main argument as to why the trial court's error was harmless.

We also are not persuaded by the state's argument that the jury necessarily found that defendant knew that

_____

[3] To act "knowingly," the person must act "with an awareness that the conduct of the person is of a nature so described or that circumstance so described exists." ORS 161.085(8). "'Physical injury' means impairment of physical condition or substantial pain." ORS 161.015(7). A "dangerous weapon" is "any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury." ORS 161.015(1). "'Serious physical injury' means physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." ORS 161.015(8).

[4] The court erred in giving this instruction as it did not comport with the requirements of *Owen*, which was decided after this case went to trial.

the crutch was a dangerous weapon when it found him guilty of unlawful use of a weapon. For that charge, the jury was instructed that the state had to prove that defendant "intentionally attempted to use unlawfully against [L] any dangerous weapon." It was further instructed that "intentionally" as used in that phrase meant "a person acts with a conscious objective to use any dangerous weapon against another person." That set of instructions also did not attach a mental state to the dangerous weapon element; that is, the jury was not asked to determine if defendant knew that he was using a dangerous weapon. Instead, the jury was asked to find whether defendant intended to use the crutch against L, and whether the crutch met the definition of a dangerous weapon.

We conclude that, under the circumstances here, the failure to properly instruct the jury was not harmless. In closing, both the state and defendant emphasized that what was in dispute was what defendant knew when he swung the crutch. The state argued that the questions to answer were, "Did he mean to hit her? Did he know what he was doing?" However, the state also argued that the jury could find that the crutch hit the car first and bounced into L's head or that defendant did not mean to hit L and still find defendant guilty of second-degree assault, because the jury only had to find that defendant was aware of the nature of his conduct. Defendant also focused on whether he knowingly caused L injury with the crutch. He argued that, based on the evidence, the crutch hit the car first and that he was acting recklessly with regard to causing L physical injury, but not knowingly, when he swung the crutch.

Based on the jury instructions, the jury necessarily found that defendant acted "with an awareness that his conduct [wa]s of a nature that would cause physical injury," that is, he acted in a manner that would cause L impairment of physical condition or substantial pain. In making that finding, the jury did not have to reject defendant's factual version of events—that he did not mean to hit L and that the crutch hit the car but bounced into L's head. Also, the jury was not asked to make any findings that touched on whether defendant was aware that using the crutch in the manner he did was readily capable of causing *serious* physical injury—that

is, a substantial risk of death or protracted impairment. The nature of the conduct here—swinging an aluminum crutch in the direction of a person—does not lead us to a conclusion that the jury would have necessarily so found had it been instructed correctly. Given that the main dispute in the case was what defendant knew and what he had to know to be convicted of second-degree assault, the court's failure to correctly instruct the jury created an erroneous impression of the law that had a likelihood of affecting the outcome of the case.

Because we conclude that the error was not harmless under the Oregon Constitution, we do not address whether we would be required to reverse the conviction under the United States Constitution. *See State v. Perkins*, 325 Or App 624, 630-31, 529 P3d 999 (2023) (explaining that the omission of an element of an offense from jury instructions deprives a defendant of the right to have a jury determination on an element essential to guilt under the Sixth and Fourteenth Amendments to the United States Constitution, which requires reversal unless we are able to conclude that the error is harmless beyond a reasonable doubt).

Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.