No. 500        July 17, 2024        815

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEREMY JOSEPH CHRISTIAN,
*Defendant-Appellant.*

Multnomah County Circuit Court
17CR34550; A175029

Cheryl A. Albrecht, Judge.

Argued and submitted May 14, 2024.

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General; Benjamin Gutman, Solicitor General; and Jennifer S. Lloyd, Assistant Attorney General.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant was convicted of various offenses, including two counts of first-degree murder, arising out of two violent incidents on the Portland MAX train. On appeal, defendant raises 16 assignments of error, challenging the trial court's denial of his motion to change venue, the court's denial of his motions for judgment of acquittal, the court's refusal to instruct the jury on the duty to retreat, and the court's decisions at sentencing. For the reasons explained below, we affirm.

This case involves two separate incidents: one in which defendant threw a half-full 32-ounce Gatorade bottle at a woman, striking her in the eye, and a second in which defendant stabbed three people, killing two, RB and TM, and seriously injuring a third. During both incidents, defendant repeatedly directed racial epithets toward the victims and bystanders. Defendant was later charged with numerous offenses, and a jury found him guilty as charged.[1] Following a sentencing enhancement trial, the trial court imposed true-life sentences on defendant's two first-degree murder convictions and partially consecutive sentences on his remaining convictions.

On appeal, in his first assignment of error, defendant contends that the trial court erred in denying his motion to change venue. He argues that he was entitled to a change of venue because adverse pretrial publicity created a presumption of prejudice. We review the denial of a change of venue for an abuse of discretion, *Praegitzer Industries v. Rollins Burdick Hunter*, 129 Or App 628, 633, 880 P2d 479 (1994), and place "great weight upon a trial court's determination that pretrial publicity was not prejudicial and that the empaneled jurors would be impartial," *State v. Fanus*, 336 Or 63, 79, 79 P3d 847 (2003), *cert den*, 541 US 1075 (2004).

---

[1] Defendant was convicted of two counts of murder in the first degree, ORS 163.107; one count of attempted murder in the first degree, ORS 163.107 and ORS 161.405; one count of assault in the first degree, ORS 163.185; two counts of unlawful use of a weapon, ORS 166.220; three counts of intimidation in the second degree, ORS 166.155; two counts of menacing, ORS 163.190; and one count of assault in the second degree, ORS 163.175.

Here, we are not persuaded that the trial court abused its discretion in denying defendant's motion to change venue. The pretrial publicity did not amount to presumed prejudice or deny defendant a fair trial, under state statutes or the state or federal constitutions. *See McDonnell v. Premo*, 309 Or App 173, 190, 483 P3d 640 (2021), *rev den*, 369 Or 507 (2022) (explaining that the change of venue "standard is the same under both the state and federal constitutions" as it is under ORS 131.355—"[a] change of venue is required only when prejudice is so great that the defendant cannot obtain a fair and impartial trial" (internal quotation marks omitted)). Although the incidents received substantial media attention, that attention was focused on the events that occurred, which were largely undisputed, rather than on the possible legal defenses available to defendant or the trial theories of the parties. *See Fanus*, 336 Or at 80 (concluding that a defendant in a murder trial was not prejudiced where the "murder *** was widely publicized and *** a source of sorrow and profound loss for many" but the "record of publicity does not disclose a community sentiment of deep and bitter prejudice against defendant" (internal quotation marks omitted)).

Moreover, the hearings were orderly and focused on the merits and inflammatory evidence was largely filed under seal. And defendant does not argue that any of the jurors in his case were actually prejudiced against him. *Cf. Irvin v. Dowd*, 366 US 717, 728, 81 S Ct 1639, 6 L Ed 2d 751 (1961) (holding that the defendant was denied a fair and impartial trial where, among other facts, two-thirds of the jurors who served on the case professed to having formed opinions as to his guilt prior to trial). Under those circumstances, the pretrial publicity did not create a presumption of prejudice such that defendant was denied a fair and impartial trial under state statutes or the state or federal constitutions.

In his second, third, and fourth assignments of error, defendant argues that the trial court erred in denying his motions for judgment of acquittal on Count 1 (first-degree murder), Count 2 (first-degree murder), and Count 3 (attempted first-degree murder). Defendant contends that

the phrasing of the indictment required the state to prove that the murders and attempted murder occurred in a particular order, and that the state failed to do so. By its plain language, however, the indictment required proof only that defendant had caused or attempted to cause the deaths of the victims in the same criminal episode, not in any particular order, which is consistent with ORS 163.107.[2] And the state adduced sufficient evidence, viewed in the light most favorable to the state, from which a rational trier of fact could find that defendant caused the deaths of two victims and attempted to cause the death of a third victim in the course of the same criminal episode. *See State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019) (quoting *State v. Clemente-Perez*, 357 Or 745, 756, 762, 359 P3d 232 (2015) (stating the standard of review for the denial of a motion for a judgment of acquittal)).

In his fifth and sixth assignments of error, defendant contends that the trial court erred in denying his motions for judgment of acquittal on Count 10 (second-degree assault) and Count 11 (unlawful use of a weapon), because there was insufficient evidence that defendant acted with the requisite *mens rea* of knowledge with respect to the dangerous weapon element of second-degree assault or the requisite *mens rea* of intent with respect to the dangerous weapon element of unlawful use of a weapon. ORS 163.175(1)(b) (second-degree assault); ORS 166.220(1)(a) (unlawful use of a weapon). For the second-degree assault charge, viewing the evidence in the light most favorable to the state, *Hedgpeth*, 365 Or at 730, there is sufficient evidence from which a jury could have reasonably inferred that, when defendant threw a half-full 32-ounce plastic bottle directly at the victim's eye with enough force that it ricocheted off her face, he was aware that the bottle, used in that manner, was readily capable of causing serious physical injury. ORS 161.015(1) (defining

---

[2] ORS 163.107 defines the crime of first-degree murder, and reads, in relevant part:

"(1) 'Murder in the first degree' means murder in the second degree *** which is committed under, or accompanied by, any of the following circumstances: ***

"(d) There was more than one murder victim in the same criminal episode ***."

"[d]angerous weapon"); *State v. Brosy*, 326 Or App 631, 637, 533 P3d 378 (2023) (explaining that, for the dangerous weapon element of second-degree assault, "the jury had to find defendant acted with an awareness that the [item], under the circumstances in which defendant used it against [the victim], was readily capable of causing * * * protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ").

Similarly, on the unlawful use of a weapon charge, evidence that defendant threatened the victim's life, pointed the 32-ounce bottle at the victim's face, and threw the bottle at the victim's head allowed a reasonable inference that defendant formed an intent to unlawfully use the bottle as a weapon against the victim. *See State v. McAuliffe*, 276 Or App 259, 265, 366 P3d 1206, *rev den*, 359 Or 847 (2016) (affirming an unlawful use of a weapon conviction where the defendant's actions and reasonable inferences drawn from them supported the requisite intent).

In his seventh assignment of error, defendant argues that the trial court erred in denying his request for a special self-defense jury instruction on "no duty to retreat." We disagree. The uniform jury instructions issued by the court adequately covered the topic of self-defense, and defendant's requested instruction was not necessary for the jury's understanding. *State v. Harryman*, 277 Or App 346, 356, 371 P3d 1213, *rev den*, 360 Or 401 (2016) ("[A] trial court does not err in refusing to give a proposed instruction—even if legally correct—if the substance of the requested instruction is covered fully by other jury instructions given by the trial court or if the requested instruction is not necessary * * * to explain the particular issue or point of law to the jury." (Internal quotation marks omitted; omission in *Harryman*.)). And nothing in the instructions implied a duty to retreat. *Id.* at 358 (upholding the trial court's denial of the defendant's request for a duty to retreat instruction where the "defendant identifies nothing in the instructions, arguments, or evidence suggesting that the jury would be inclined to think—erroneously—that there was a duty to retreat").

In his eighth, ninth, and tenth assignments of error, defendant advances three arguments challenging the constitutionality of the statutory sentencing scheme for first-degree murder, ORS 163.107.[3] Two of defendant's arguments—that the sentencing scheme contained in ORS 163.107 violates the Sixth Amendment, and that ORS 163.107 does not authorize a trial court to empanel a jury to find sentence enhancement facts—are foreclosed by our decision in *State v. Johnson*, 329 Or App 588, 635-37, 542 P3d 467 (2023).

Defendant's third argument is that ORS 163.107 is unconstitutionally vague, because it allows a sentencing court to increase a first-degree murder sentence for any reason.[4] Although ORS 163.107 provides a sentencing court with broad discretion to increase a first-degree murder sentence, requiring only that the court "state on the record the reasons for imposing the sentence," ORS 163.107(2)(b), a sentencing statute is not unconstitutionally vague where it grants the court discretion to impose a sentence from a range of possible punishments for the crime. Here, the statute provides for a minimum of 30 years without the possibility of parole or release, and a maximum of life imprisonment without the possibility of parole (for defendants over 18 years of age at the time of the offense). *See Beckles v. United States*, 580 US 256, 264, 137 S Ct 886, 197 L Ed 2d 145 (2017) (Federal "cases have never suggested that a defendant can successfully challenge as vague a sentencing statute conferring discretion to select an appropriate sentence from within a statutory range, even when that discretion is unfettered.");

---

[3] The state raises a cross-assignment of error relating to the imposition of defendant's sentence pursuant to ORS 163.107, which is rendered moot by our resolution of defendant's eighth, ninth, and tenth assignments of error.

[4] ORS 163.107(2) provides, in relevant part:

"(a) Except as otherwise provided * * *, the court shall sentence a person convicted of murder in the first degree, who was at least 15 years of age at the time of committing the murder, to life imprisonment. The court shall order that the defendant be confined for a minimum of 30 years without possibility of parole or release to post-prison supervision except as provided in ORS 144.397 * * *.

"(b) The court may sentence the person to life imprisonment without the possibility of parole if the person was at least 18 years of age at the time of committing the murder. The court shall state on the record the reasons for imposing the sentence * * *."

*Miller v. Lampert*, 340 Or 1, 12, 125 P3d 1260 (2006) ("The Oregon Legislature * * * could * * * create[e] wide sentencing ranges that it deemed appropriate and allow[] sentencing courts to impose sentences within that range after making any findings that it deemed relevant[.]"). Moreover, a sentencing court is not afforded unfettered discretion under ORS 163.107, because the considerations on which the court may rely in imposing a sentence are limited by the Eighth Amendment to the United States Constitution and Article I, sections 15 and 16, of the Oregon Constitution. *See* U.S. Const, Amend VIII (prohibiting "cruel and unusual punishments"); Or Const, Art I, § 15 (requiring that criminal sentences "shall be founded on these principles: protection of society, personal responsibility, accountability for one's actions and reformation"); Or Const, Art I, § 16 (also prohibiting "[c]ruel and unusual punishments" and requiring that "all penalties shall be proportioned to the offense").

Finally, in his eleventh through sixteenth assignments of error, defendant raises various concerns regarding findings on three sentencing enhancement factors. Regarding the first finding—that the probability is high that defendant cannot be rehabilitated—defendant advances vagueness challenges as to the terms "high probability" and "rehabilitated," and contests the sufficiency of the evidence to support the finding. However, defendant did not preserve below his challenge to "high probability," and he does not explain why the court's instruction defining "rehabilitated" was insufficient. Additionally, the record contains evidence of defendant's prior criminal activity, his statements made in jail while awaiting trial, his mental health records, and his refusal to accept responsibility for his actions. That evidence, viewed in the light most favorable to the state, *Hedgpeth*, 365 Or at 730, permitted a rational factfinder to find that there exists a high probability that defendant cannot be rehabilitated.

Regarding the second finding—that defendant's crimes were precipitated by his unreasonable racial and religious bias—defendant argues that there is no evidence that the murders and attempted murder were *directly* caused by racial and religious bias. However, viewing the evidence

presented at trial in the light most favorable to the state, and under the trial court's unchallenged definition of "precipitated," a rational factfinder could find that the crimes were precipitated by such bias.

As to the third finding—that defendant showed no remorse—defendant contends that no rational factfinder could find that he showed no remorse for murdering RB (Count 2), identifying statements he made to police and a psychiatrist as evidence that he exhibited some remorse. But the record contains evidence that defendant repeatedly expressed his belief that he was justified in stabbing all three victims and, further, he attempted to profit off of the murders by selling his possessions on websites that featured distribution of memorabilia from "mass murders." Defendant stated that the victims "signed their own death warrant" and that he did not "feel one bit remorseful or sorry about that." *Cf. State v. Garza*, 227 Or App 291, 294, 206 P3d 209, *rev den*, 347 Or 43 (2009) (concluding that the defendant's statement, "I can only blame myself for what has happened," could amount to a showing of remorse). That evidence, viewed in the light most favorable to the state, supports a finding that defendant felt no remorse for murdering RB.

Affirmed.